The State v. Clark.

THE STATE v. CLARK, *Appellant.*

**Criminal Law** : DWELLING HOUSE : LARCENY. A basement or cellar, with only an outside door, used for the storage of ice and beer, and having rooms above it occupied by families as a residence, with no internal communication between it and the rooms above, and in which the families have no interest or ownership, and over which they have no control, is not a dwelling house within the meaning of the statute (R. S., sec. 1309), and one who steals property therefrom, of less value than thirty dollars, is guilty only of petit larceny.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*W. M. Draffen* for appellant.

(1) The first point in this case is, whether or not the house referred to is a dwelling house. There is no internal communication between the sleeping apartments above, and the ice-house below. The owner of the ice-house does not live in the rooms above. The entrance to the ice-house is upon the outside of the same, and is in no way connected with the dwelling house. Wharton's Criminal Law [8 Ed.] 783; 1 Bishop on Criminal Law, 165 to 180. (2) There is a fatal variance between the *allegata* and *probata*, as to the ownership of the house. *State v. Williamson*, 13 Tex. App. 514; *State v. Rhorer*, 13 Tex. App. 163.

*B. G. Boone*, Attorney General, for the state.

The statute in regard to larceny does not define a dwelling house, but section 1297, Revised Statutes, in regard to burglary, a kindred crime, a dwelling house is defined as follows: "No building shall be deemed a dwelling house, or any part of a dwelling house (within the meaning of the provisions relative to burglary), unless the same be joined to, immediately connected with, and is a part of a dwelling house." The definition, if applied to the case at bar will, under the evidence, render the third instruction proper. 2 Bishop on Criminal Law [5 Ed.] sec. 104; Wharton's Crim. Law [8 Ed.] sec. 781; *Pitcher v. People*, 16 Mich. 142. In statutes against larceny from a dwelling house, the term "dwelling house" has the same signification as in burglary. 2 East P. C. 633, 634; 2 Deac. Cr. L. 758. The three instructions asked by the defendant were refused by the court. The first was based on the assumption that if the tenants living in the house over the cellar had no control over it, and there was no internal communication be-

The State v. Clark.

tween the house and the cellar, that the offence charged did not constitute larceny from a dwelling house. This was error and was properly refused. Bish. Stat. Cr. [2 Ed.] secs. 277–288. The third told the jury that it was necessary that the grand jury should have used proper diligence in ascertaining the name of the owner of the dwelling house before charging that the same belonged to a party to the jurors unknown. This was erroneous and properly refused, because it was not necessary to state the name of the owner of the house. 8 Gray, 469 ; 1 Leach. [4 Ed.] 252.

RAY, J.—At the November term, 1885, of the circuit court of Cooper county, the defendant, John Clark, and one Straub Young, were jointly indicted for larceny committed in a dwelling house in said county. The indictment was framed upon section 1309, Revised Statutes 1879, which provides that : " If any larceny be committed in a dwelling house, or in any boat or vessel, or in any railroad car, or by stealing from the person in the night time, the offender may be punished by imprisonment in the penitentiary not exceeding seven years."

The indictment (omitting its formal parts), charges that, at, etc., on, etc., one Straub Young, and one John Clark, then and there, in a dwelling house (to-wit, the dwelling house of a person to the grand jurors unknown), feloniously did steal, take, and carry away, a certain keg of beer, the property of one August Dengolensky, then and there, in said dwelling house being, against the peace and dignity of the state.

Upon a trial of the cause before a jury at the same term, the following, in substance, was the evidence in the case : That on the twenty-eighth day of August, 1885, one Straub Young and John Clark did take from an ice house one keg of beer. That said beer belonged to one August Dengolensky, and the house was the property of William Dengolensky, and was situated in

the city of Boonville. The defendants took the beer from the house in the day time, and the beer was worth three dollars and sixty-five cents. That the said ice house was made of brick, and under the ground, and that it was built originally for an ice house, but afterwards a floor was put in, leaving the part below as an ice house, and making four rooms above, without any internal communication between the rooms above and the ice house below. That there was but one way of ingress and egress to the said ice house, which was by a door upon the outside. That the occupants of the rooms above neither owned nor had any control over the ice house and beer cellar below. That said ice house and beer cellar, and the dwellings over it, were the property of and owned by William Dengolensky, and that a part of the ice house was leased by him to one August Dengolensky, as and for a beer cellar; and that two of the rooms over the ice house were leased by him to one of the defendants, Straub Young, who occupied the same with his family as his dwelling house at the time of the larceny charged in the indictment, and the remaining two rooms were leased by him to one Florence Jackson, who lived in the same at the time. That the only entrance to the said ice house and beer cellar was from the outside of the same, and that there was no door or opening of any kind between the ice house and beer cellar and the rooms above, occupied by the defendant, Young, and Florence Jackson, and that a floor separated the same. That said ice house and beer cellar, which are one and the same, were in the possession and under the control of one William Dengolensky, the owner thereof, and the said August Dengolensky, the lessee of a part thereof, and that neither of them had any control or resided in the rooms over and above said ice house and cellar.

At the close of the testimony the court, over the ob-

jections and exceptions of defendant, gave the following instruction for the state :

"3. If the jury shall find from the evidence that the witness, Dengolensky, kept his beer in the basement of a house, and that said basement was also used as an ice house, and that the superstructure over said basement was composed of four rooms, and that two families were living in those rooms, and that each family occupied different rooms, and that the only means of entering the basement, where said beer was kept, was by a cellar door, on the outside, then the jury are instructed that said basement was ᵔ portion of a dwelling house, and if the defendants took the beer mentioned in evidence from said basement, then they took it from a dwelling house, within the meaning of the law."

The court then refused the following instruction asked by defendants, to which defendants excepted :

"1. The jury are instructed that the defendants are indicted for larceny committed in a dwelling house, and they are further instructed, that if they find from the evidence that Straub Young, one of the defendants, was dwelling in and residing with his family in a portion of the house referred to in the indictment, and that the keg of beer mentioned in said indictment was in an ice house, which formed a part of, or was connected with the dwelling house in which Young was living with his family, and that said ice house, at the time it is charged said beer was taken, was under the control of Wm. Dengolensky, and that there was no door or internal communication between the part in which Young was living and the ice house, then the jury cannot find the defendants guilty of the offence charged in the indictment."

Upon the trial, as shown by the record, the defendant, Straub Young, was acquitted by the jury ; but the defendant, John Clark, was found guilty as charged in the indictment, and his punishment assessed at imprisonment in the penitentiary for three years and four

months ; and, failing to secure a stay of execution, he is now in the penitentiary, as appears by the brief of the attorney general for the state. It may be well to premise that by section 1307, Revised Statutes 1879, it is provided that: "Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, right in action, or other personal property, or valuable thing whatsoever, of the value of thirty dollars or more, or any horse, mare, gelding, colt, filley, ass, mule, or neat cattle, belonging to another, shall be deemed guilty of grand larceny, * * *." By section 1308, persons convicted of grand larceny shall be punished (as the case may require) by imprisonment in the penitentiary from five to seven years. Section 1318 provides that : "Every person who shall steal, take and carry away any money, or personal property, or effects of another, under the value of thirty dollars, not being the subject of grand larceny, without regard to value, shall be deemed guilty of petit larceny, and on conviction shall be punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment." And section 1319, provides that : "If upon the trial of an indictment for grand larceny the evidence shows the value of the property taken would constitute a case of petit larceny, the defendant may be convicted of that offence." It may be further premised in the same connection, that while section 1309 does not, in express terms, declare that the perpetrator of "larceny in a dwelling house" shall be deemed guilty of grand larceny, yet it says that he may be punished (in like manner, that is), by imprisonment in the penitentiary not exceeding seven years ; and in *State v. Ramelsburg*, 30 Mo. 26, the court, speaking through Scott, J., held that stealing committed in a dwelling house was grand larceny, within the meaning of a similar statute.

But the controlling, if not the only question in this

case, is whether the stealing of the keg of beer in question from the "ice house or beer cellar" in question was, under the evidence in the cause, "a larceny committed in. a dwelling house," within the meaning of section 1309, *supra*, and the authorities applicable thereto.    An eminent text writer (1 Wharton's Crim. Law [8 Ed.] secs. 683–781, 787), treating of burglary (a somewhat kindred crime), says that: "The breaking and entering, to constitute a burglary, must be, ordinarily, into the dwelling house of another; that is to say, the house in which the occupier and his family usually *reside*, or, in other words, dwell and lie in."    "As an introduction to the cases hereafter to be given in detail, it may now be stated generally, that no matter to what use an outbuilding may be put, it is burglary to break and enter it, if it is appurtenant or auxiliary to the dwelling house, and is within such convenient distance from the same as to make passing and repassing an ordinary household occurrence.    *    *    *    The question is, is it probable that the building is under the immediate personal care of its owner?  If so, in view of the peril to life consequent upon a nocturnal attack on it the offence is one against family peace and safety, as well as against property and consequently rises to burglary."    "A dwelling house is deemed any permanent building in which a party may dwell and lie, and as such, burglary may be committed in it.    A set of chambers in an inn of court or college is deemed a distinct dwelling house for this purpose.    So even a loft over a stable, used for the abode of a coachman, which he rents for his own use and that of his family, is a place which may be burglariously broken."

Another distinguished writer (Bishop on Statutory Crimes [2 Ed.], sec. 242), says that:  "The word 'dwelling house,' the meaning of which is fully explained further on, includes, in the law of burglary and generally in the law, a structure for business uses, whereof

any internally connected room is occupied for sleeping and abode." The same author in section 277, says that: "The words 'dwelling house' and 'mansion house' are identical in legal writings, but 'house' is not quite the same. * * * The latter is of meaning somewhat larger than the others, though the difference is not quite definable. * * * As already seen, the meanings of these terms may vary with the subject and their connections with other words ; but in general they are stable in the criminal law. For example, in statutes against larceny from the dwelling house, the term 'dwelling house' has the same significance as in burglary." In section 278, the same author uses this language: "A dwelling house is the apartment, building, or cluster of buildings, in which a man with his family resides. To explain—one need not so construct this habitation that all its rooms will be under one roof; therefore, the word 'dwelling house' embraces the entire congregation of buildings, main and auxiliary, used for abode." Section 230, this writer, says that: " If one part of a building is used for abode, it gives the character of dwelling house to every other part, to which there is an *internal communication;* even though according to the authorities generally, occupied by another person for an entirely different purpose. * * * If there is no internal communication, the parts are to be considered as though they were distinct buildings." The same author in section 233 uses the further language : " In reason, whether a man's abode consists of a cluster of separate buildings, or of separate rooms under one roof, the result is the same. And it is that the abode, the dwelling house, extends only to buildings and rooms used either directly for habitation, or as auxiliary thereto ; with this single exception, that where the walls of the dwelling enclose other premises connected by an internal communication with the rooms lived in, such premises, if not the abode

of another person are, though occupied by another, parts of the dwelling house with which they connect."

In this same connection also we may quote a paragraph from the opinion of Judge Scott, in the case of *State v. Ramelsburg*, 30 Mo. 28, which like this was an indictment for stealing from a dwelling house, to this effect: "The same offense may be committed under circumstances which will greatly enhance its guilt. Property, which is necessarily exposed to the depredations of offenders, must be protected by severer punishment than that which may be guarded and protected. So those who would make a visit to a dwelling house a screen to hide a theft, should be punished more severely than one who would steal the same thing found in a place calculated to create a temptation to do the act. The one act is indicative of a much more depraved disposition in the offender than the other."

Tested by the rules enunciated in these authorities, it is manifest, we think, that the conviction and judgment in the case at bar cannot be upheld, under the undisputed evidence in the cause. It clearly appears that the keg of beer in question, worth $3.65, was stolen by said Young and the defendant, Clark, in the day time from the ice house or beer cellar in question, which formed the basement of the building above, which had four rooms, but without any internal communication between said rooms above and said ice house below; that there was but one way of ingress and egress from said ice house, beer cellar or basement, and that was by a door upon the outside; that the occupants and dwellers in the rooms or building above, neither owned, possessed, nor had any interest in, or control over said ice house, cellar or basement, or the business or uses to which it was applied; that the same and the dwelling over it were the property of, and owned by Wm. Dengolensky, and that part of the ice house, cellar or basement without any internal communication with the building or

rooms above, was leased to one August Dengolensky as and for a beer cellar; that two of the rooms above mentioned were leased to Straub Young and the other two to Florence Jackson, who occupied the same as a dwelling at the time; that said ice house was made of brick and under ground and that it was built originally for an ice house, but afterwards a floor was put in, leaving the part below as an ice house and making four rooms above; but without any internal communication between the rooms or building above and the ice house below, which as before stated had but one way of ingress and egress and that by a door upon the outside, and that the dwellers in the building above, as before stated, had no interest, possession or control of the same, or any concern with those using the same.

It is quite clear, therefore, that the ice house, beer cellar or basement was not, in the language of the text writers, under the immediate personal control of any of the dwellers above, and that being so, there was nothing to make passing and repassing from said ice house to the building above, in the language of the text writers, an ordinary household occurrence on the part of the dwellers above, and if that be so, the peril to life consequent upon a nocturnal attack upon it, much less an attack in broad day light, apprehended by the text writers and adjudged cases, does not exist in the case at bar; and if so, there is nothing in the facts of the case or the policy of the law to make the offence in question, in the language of the books, one against family peace and safety as well as against property; or in other words to convert a case of simple "petit larceny" into one of "grand larceny" within the purview of section 1309, *supra;* nor is there in the case at bar, in the language of Judge Scott in delivering the opinion in the case of the *State v. Ramelsburg,* 30 Mo. page 28, any thing like "a visit to a dwelling house in order to screen or hide a theft" so as to render

the defendant deserving of a severer punishment than that due to a case of simple petit larceny.

It follows, therefore, that the trial court erred in giving the instructions asked for on the part of the state, and in refusing that requested by defendant. And for these reasons, the judgment of the circuit court is reversed, and the defendant ordered to be discharged from further imprisonment by reason thereof. All concur.