BOBBY WAYNE BURGETT *v.* STATE OF INDIANA.

[No. 2-1173A240. Filed August 1, 1974.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Glenn A. Grampp,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Bobby Wayne Burgett (Burgett) appeals from a jury conviction of first degree burglary, claiming insufficient evidence to prove a breaking and entry into a "dwelling house", misconduct by the Prosecutor, and erroneous exclusion of defense evidence.

We affirm.

## FACTS

The facts and evidence most favorable to the State are:

On the evening of December 2nd, 1972, Burgett was visiting Michael Foster (Foster) at Foster's apartment in Indian-

apolis. During this visit, Foster and Burgett discussed items of property stored by Foster's landlord, Jewell Leak (Leak), in the basement of Leak's single family dwelling located on the lot adjacent to Foster's apartment.

Following this conversation, Burgett walked next door to the Leak residence (1345 S. Belmont) and gained entrance into the basement by prying open an outside cellar door and then opening an inner cellar door with a screwdriver. There was no means of access to the basement other than by these two exterior doors.

He then proceeded to help himself to certain household items consisting of an electric drill and hedge clipper, thermos bottle, clock, sander, radio, tool box, 3 legged stool, grinder, tachometer, and 100 feet of cord . . . and returned to Foster's apartment briefly before returning to his own residence.

During the course of these events, Leak who had lived for 14 years at 1345 S. Belmont, was temporarily absent for the weekend; when he returned on December 4th, 1972, he discovered the theft and called the police. Several days later, Foster implicated Burgett.

At trial, one of the investigating police officers, Richard Justice (Justice), testified concerning his pre-arrest interrogation of Burgett, at which time Burgett insisted he had purchased Leak's property from Foster without knowledge that it was stolen property. In addition, Justice testified that Burgett "gave several statements that were contradictory * * *." Burgett's counsel objected to this latter testimony on the ground that it was a conclusion on the part of the witness, and moved to strike it from the record. The trial court sustained the motion and admonished the jury to disregard Justice's answer.

Later, the Prosecutor referred to this stricken testimony when he asked Justice:

"In your earlier testimony *you referred to different statements that Mr. Burgett had made.* What, if anything, other

than he had acquired the property from Mr. Foster did he relate to you?" (emphasis supplied)

Defense counsel made no objection to this reference by the Prosecutor. Justice went on to answer in some detail as to Burgett's inconsistent stories.

Objection was then made, but only to Justice's answer (not the Prosecutor's earlier remarks), solely upon the ground that it was a "voluntary statement on the part of the witness." The trial court sustained this objection also.

The State rested its case after Foster testified to the details of Burgett's involvement in the crime.

Burgett then took the stand on his own behalf and, by way of defense, explained his possession of Leak's property as the result of purchase from Foster:

"Q. Tell the jurors which items you purchased?

"A. The items I purchased was an electric drill, a sander, a grinder, and I believe a clock radio."

Defense counsel then questioned Burgett concerning the price which Foster allegedly wanted for the items. His answer was cut short, however, by the State's objection (based upon the hearsay rule) to any testimony concerning what Foster may have said. The trial court sustained this objection, but apparently on different grounds, i.e., the absence of a foundation for purposes of impeaching Foster's prior testimony.

Thereafter, Burgett again testified (without objection) to the alleged bargain struck with Foster as to the stolen items:

"Q. Now, Mr. Burgett, I believe you stated that Mr. Foster came up to the service station and this is where you purchased the materials, or the properties that you had, is this correct?

"A. Yes, it is.

"Q. And what price did you pay for those, sir?

"A. It summed up to an amount of ten dollars ($10.00)."

On March 14, 1973, the jury found Burgett guilty of first degree burglary and thereafter the trial court sentenced him to ten to twenty years imprisonment.

He appeals.

## ISSUES

This appeal presents three issues:

ISSUE ONE. Does a breaking and entering into the basement of a single family residence with an exterior entrance only, constitute first degree burglary within the meaning of the statutory[1] reference to a "dwelling house or other place of human habitation"?

ISSUE TWO. Was Burgett denied a fair trial because of the Prosecutor's reference to stricken testimony relating to his prior contradictory statements?

ISSUE THREE. Was Burgett denied his right to present his defense of purchase of the household items in question from Foster because the trial court sustained an objection to Burgett's testimony as to prices quoted by Foster?

AS TO ISSUE ONE, Burgett contends that Leak's basement was "self contained" and could not be a "dwelling house" within the meaning of the first degree burglary statute because it had no inside connection with Leak's place of residence immediately overhead.

The State responds that the evidence sufficiently demonstrated that the basement was an integral part of Leak's residence and had the character of a place of abode.

AS TO ISSUE TWO, Burgett contends that reference by the Prosecutor to previously stricken testimony as to his previous contradictory statements precluded him from receiving a fair trial, and that for him to object "would only have re-enforced and reminded the jury of the earlier testimony".

---

1. IC 1971, § 35-13-4-4, Ind. Ann. Stat., § 10-701 (Burns 1973 Supp.).

The State points to Burgett's failure to object.

AS TO ISSUE THREE, Burgett claims that by excluding part of his testimony relating to his purchase of the stolen items from Foster, the trial court unjustifiably prevented him from proving his defense before the jury.

The State argues the only portion of Burgett's defense testimony excluded related to prices quoted by Foster, and there was other testimony by him on this subject.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that a breaking and entry into a "dwelling house" was sufficiently established by proof of Burgett's forcible entry into Leak's basement.

Is a basement not to be considered part of a dwelling house because it is accessible only by an exterior entrance . . . or, as Burgett says, because it is self contained?

Basements are located directly under the living area of a residence and are used for a variety of purposes connected with family living, such as storage of various household items, location of heating and mechanical equipment, and laundering of clothing. Being under the same roof, functionally interconnected with and immediately contiguous to other portions of the house, it requires considerable agility to leap over this fulsome interrelationship to a conclusion that a basement is not part of a dwelling house because no inside entrance connects the two.

Fortunately the Indiana cases do not require us to take so illogical a leap. In determining what constitutes a "dwelling house" the courts have given that term its plain and usual meaning.

In *Simmons* v. *State* (1955), 234 Ind. 489, 129 N.E.2d 121, the court significantly referred to a dwelling house in terms of the complete structure, i.e., *a house* occupied as a residence, "*a building* designed for the habitation and residence of men". (emphasis supplied) 234 Ind. at 499, 129 N.E.2d at 125.

In *Gaines* v. *State* (1921), 191 Ind. 262, 132 N.E. 580, the dwelling house, or place of residence, was similarly referred to in terms of "the *building* broken and entered * * *". (emphasis supplied) 191 Ind. at 265, 132 N.E. 580, quoting *Bell* v. *State* (1866), 20 Wis. 630.

And in *Smart* v. *State* (1963), 244 Ind. 69, 190 N.E.2d 650, our Supreme Court spoke of a dwelling house as:

". . . *a 'home' or a permanent or settled residence house for a family and their personal possessions.* It also connotes a range of sentiment and feeling associated with it." (emphasis supplied) 244 Ind. at 73.

Throughout these cases runs the notion that a dwelling house encompasses all portions of the residential structure which is possessed by and within the "range of sentiment and feeling" of the persons residing therein.

The "unit" concept of a dwelling house, despite an outside only entrance to a basement, is emphasized in 12 C.J.S., Burglary § 18 at 680-681:

"[T]*he cellar and all rooms of a dwelling house are regarded as parts of the dwelling house, so that it is burglary to break and enter the same with felonious intent, although there may be no entry into the dwelling house itself, or into those rooms of the dwelling house in which the occupants sleep * * *.*" (emphasis supplied)

In *Mitchell* v. *Commonwealth* (1889), 88 Ky. 349, 11 S.W. 209, the defendant broke and entered a cellar having the same characteristics of accessibility as did Leak's basement. This fact did not deter the court from finding that the breaking and entry invaded a part of the dwelling house:

"There is a diversity of decision as to what does, and what does not, in law, constitute *a part of a dwelling-house.*

* * *

"If, however, an out-house, having no internal communication with the dwelling proper, may be considered as so

appurtenant to it that burglary may be committed therein, surely it would seem *it should be so held as to a cellar under the dwelling, although there may be no means of internal communication between them. It is under the same roof. It is a part of the house in which the occupant and his family sleep. It is essentially part and parcel of the habitation."* (emphasis supplied)

*See also, State* v. *Parker* (1973), Mo., 501 S.W.2d 3; *Marshall* v. *Wheeler* (1925), 124 Me. 324, 128 A. 692; *State* v. *Brower* (1905), 127 Iowa 687, 104 N.W. 284; *Hahn* v. *State* (1900), 60 Neb. 487, 83 N.W. 674; *Mason* v. *Commonwealth* (1897), 101 Ky. 397, 41 S.W. 305; *cf., State* v. *Clark* (1886), 89 Mo. 423, 1 S.W. 332 (Cellar not possessed or controlled by persons residing in upper level of multi-family dwelling.); *Arnold* v. *State* (1969), 7 Md. App. 1, 252 A.2d 878 (Multi-family apartment building).

So whether the test be location or use or both, the whole is the sum of its essential parts . . . and lack of internal access to a basement does not prevent the basement from being a part of the dwelling house.

Leak's permanent place of abode was 1345 S. Belmont. His basement was directly contiguous to and a functioning part of his living quarters on the upper floor of his single family residence and was used for the storage of personal household items owned by him. Simple logic would suffer were we to conclude that such a basement was not a part of the dwelling house.

Burgett attempts to distinguish *Mitchell, supra,* on the ground that it was decided under a differently worded statute, encompassing not only a dwelling house but also "any outhouse" appurtenant thereto; but the Kentucky court's decision was not based on that portion of the statute, as indicated by its repeated references to a cellar as *part of* the dwelling house.

Likewise Burgett can find no sustenance in *Smart* v. *State, supra,* because it dealt only with the distinction between

a dwelling house and a place of human habitation in terms of permanence of abode . . . a home as opposed to a summer cottage. It did not treat the question of the severability of part of a dwelling house.

ISSUE TWO.

CONCLUSION—It is our opinion that Burgett was not denied a fair trial because of the Prosecutor's reference to stricken testimony concerning his prior contradictory statements.

Burgett's counsel failed to object to the Prosecutor's reference in a question to Officer Justice as to contradictory statements made by Burgett while in custody (which statements had been previously stricken on objection). After the question was answered the objection then made was that the answer was not responsive . . . not that the question itself was prejudicial.

Objection to prejudicial remarks by the Prosecutor must be timely made in order "to provide the court with an immediate avenue of correction without the need to begin the entire trial process anew at great loss of public judicial resources". *Bradburn* v. *State* (1971), 256 Ind. 453, 269 N.E.2d 539 at 542. *See also, Woods* v. *State* (1970), 255 Ind. 483, 265 N.E.2d 244; *Patterson* v. *State* (1969), 251 Ind. 580, 244 N.E.2d 221, cert. denied, 396 U.S. 829; *Dull* v. *State* (1962), 242 Ind. 633, 180 N.E.2d 523, cert. denied, 371 U.S. 902; *Blue* v. *State* (1946), 224 Ind. 394, 67 N.E.2d 377, cert. denied, 330 U.S. 840.

Further, Burgett may not avoid this rule by claiming that the omitted objection was the result of a fear that to do so would have further prejudiced his case. It is established that the rule requiring an objection is not diluted by such a contention. *Brown* v. *State* (1970), 255 Ind. 47, 262 N.E.2d 515; *Rexroat* v. *State* (1964), 245 Ind. 688, 201 N.E.2d 558; *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92; *Coakley* v. *State* (1972), 152 Ind. App. 280, 283 N.E.2d 392.

While the Prosecutor's reference to the stricken prior contradictory statements may have had some prejudicial effect, the error must be considered harmless if it has no apparent effect on the outcome of the case. There was substantial evidence of Burgett's guilt, and the outcome of the case would not appear to be changed by the Prosecutor's remark. *Troyer* v. *State* (1888), 115 Ind. 331, 17 N.E. 569; *Garrett* v. *State* (1973), 157 Ind. App. 426, 300 N.E.2d 696.

ISSUE THREE.

CONCLUSION—It is our opinion that Burgett was not prevented from presenting his defense of purchase of the household items in question by excluding part of his testimony because there was additional testimony relating to the purchase.

The exclusion of part of Burgett's testimony as to prices quoted to him by Foster in allegedly selling the "stolen" property to Burgett was not prejudicial because there was additional testimony by Burgett himself on this subject. Given the presence of this additional evidence we need not decide if the trial court erred, for even if such error be assumed a reversal would not be warranted. *Smith* v. *State* (1968), 250 Ind. 125, 235 N.E.2d 177; *Fletcher* v. *State* (1961), 241 Ind. 409, 172 N.E.2d 853; *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N.E.2d 99; *Fenwick* v. *State* (1974), 159 Ind. App. 311, 307 N.E.2d 86; *Marine* v. *State* (1973), 158 Ind. App. 72, 301 N.E.2d 778.

The judgment of the trial court is affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 314 N.E.2d 799.