GEORGE ABBOTT *v.* STATE OF INDIANA

[No. 2-476A146. Filed January 24, 1978.]

*Lante K. Earnest, Klineman, Rose and Wolf*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Defendant-appellant Abbott appeals from a conviction for entering to commit a felony.

## FACTS

In the afternoon of June 1, 1975 Robert and Mary Sanders were returning to their home when they saw a man standing in their front yard. As they drove into their driveway, the man crossed the street and began ringing the doorbells and looking through windows of houses on the other side of the street. The Sanders testified that they continued to watch the man until he opened the gate and went behind the home of Joe Mandabach.

Mrs. Sanders called the police; then she returned to the window in her home and observed the man, which she had seen previously, come from the rear of the Mandabach home carrying a filled grocery sack, some grass shears, and an electric sander. As the man walked down the street, Mr. Sanders followed him at a distance in his truck. When a police officer arrived Mrs. Sanders showed him the direction in which the man was walking.

Following Mrs. Sanders directions the police officer quickly spotted Abbott carrying a grocery sack, grass shears, and an electric sander about four blocks from the Mandabach residence. The

officer stopped Abbott, placed Abbott in the patrol car and drove him back to the Mandabach house.

At the Mandabach house the officer spotted a screwdriver and some melted ice cream, which was the same as that in Abbott's sack, on the ground near a garage window. The officer observed that the window in the garage, which was attached to the house, had been broken, that Abbott had a cut on his wrist, and that the door to an upright freezer which was in the garage was open and had splotches of blood on it. He also observed more ice cream on the floor near the freezer. The grass shears, electric sander, and some frozen meat, which were in Abbott's possession when he was apprehended, were later identified by Mr. Mandabach as belonging to him.

## ISSUES

The issues which have been presented to this court for review are as follows:

1. Whether the Court erred in overruling the Defendant-Appellant's Tendered Instruction No. 3.

2. Whether the Court erred in not directing a verdict of acquittal at the conclusion of the State's evidence on the grounds that the State failed to prove an essential element of the alleged crime of first degree burglary, namely — that a dwelling house or other place of human habitation was broken and/or entered.

## ISSUE ONE

Abbott contends that the court erred in refusing to give to the jury Defendant's Tendered Instruction No. 3, which reads as follows:

"The mere possession of stolen goods, standing alone, is insufficient to support the conviction of first degree burglary or entering to commit a felony."

Abbott contends that Defendant's Tendered Instruction No. 3 is a correct statement of the law because our Supreme Court in *Gann v. State* (1971), 256 Ind. 429, 269 N.E.2d 381 approved an instruction which contained language similar to the instruction in issue in the case at bar. That instruction approved in *Gann, supra,* at pages 383-384 of 269 N.E.2d reads as follows:

"The unexplained, exclusive possession of a defendant of recently stolen property is a circumstance which may be considered, along with the other facts and circumstances of the case, in determining the guilt or innocence of the accused. However, *the mere possession of stolen goods, standing alone, is insufficient to support a conviction*, and the defendant cannot be convicted on the basis of evidence of mere possession of stolen goods alone.

"If you should find from the evidence, beyond a reasonable doubt, that a burglary was in fact committed on the premises involved in the case, and that within a short period of time thereafter the defendant himself or with others was found in the unexplained, exclusive possession of property identified by the evidence as that stolen from the burglarized premises, you may consider such circumstances in arriving at your verdict in this case. However, no presumption of guilt of burglary is made or arises against a defendant merely by reason of his exclusive possession of goods which have been unlawful and burglariously taken within a short period of time beforehand, if such be the case. Proof of the commission of the offense must be made beyond a reasonable doubt by the State, and the defendant has no burden to account for or explain for his possession of the goods, but the burden of proving his built beyond a reasonable doubt rests entirely upon the State, and you would not be warranted in finding the defendant guilty unless all of the elements of the offense charged have been proved by the evidence, of whatever class it may be, beyond a reasonable doubt."

In *Cockrum v. State* (1968), 250 Ind. 366, 234 N.E.2d 479, our Supreme Court stated:

"In Miller v. State of Indiana (1944), 223 Ind. 50, 58 N.E.2d 114, the following statement is made:

'* * * The purpose of instructions is to inform the jury of the law applicable to the facts in such a manner that the jurors will not be misled, and that they may clearly comprehend and understand the case and arrive at a just, fair, and correct verdict. * * *'

The test for erroneous instructions to be extracted from Miller v. State (supra) is one of misleading the jury."

As far as it goes, Defendant's Tendered Instruction No. 3 is a correct statement of abstract law. However, unlike the instruction

approved in *Gann, supra,* Defendant's Instruction No. 3 in the case at bar tends to be misleading and, therefore, erroneous under the tests set forth in *Cockrum, supra,* and *Miller, supra.* It lacks the language, that the instruction in *Gann, supra,* contained, wherein the court instructed the jury that although the defendant's unexplained possession of stolen goods could not alone support conviction, it was nevertheless proper for the jury to consider such fact together with all the other evidence in reaching its verdict.

In fact the very reason that the court in the case at bar refused to give Defendant's Tendered Instruction No. 3 was that it was incomplete because it had been taken out of context. When Abbott tendered his Instruction No. 3, the court, after hearing Abbott's counsel read the instruction from *Gann, supra,* as it was quoted in *Abel v. State* (1975), 165 Ind. App. 664, 333 N.E.2d 848, stated the following in regard to Abbott's Tendered Instruction No. 3:

"THE COURT: Well, I'd be inclined, if you'd put it all in there, but I think you just picked out part of it. Do you follow me?

MR. BAGNI: Yes, Your Honor. I have no objection to the entire instruction being a part of the . . .

THE COURT: I will not give it as it is written here, because it's out of context.

MR. BAGNI: Well, I still think it states a valid proposition of law.

THE COURT: 'Mere possession of stolen goods standing alone'?

MR. BAGNI: I think that's an accurate statement of the law, has a clear holding of many prior cases in the Indiana Supreme Court, as well as the Court of Appeals. *Abel vs. State* simply being one which has several citations.

\* \* \*

MR. BAGNI: As far as I'm concerned, Your Honor, it gives substance to the whole notion of presumption of innocence and the burden of proof. Gives the jury a factual circumstance upon which to base [its] thinking, more than just a high-falutin, high-sounding principle that [has] very little substantive meaning to the average man. This is clearly an issue in this case.

THE COURT: I will not give it, as tendered."

(Our inserts)

We hold that the trial court did not err in refusing to give Defendant's Tendered Instruction No. 3 to the jury because in the form that it was tendered it could have been misleading to the jury.

Defendant's Tendered Instruction No. 3 was also misleading and was properly refused because Abbott's possession of the stolen goods was not the *only* evidence which connected him with the break in at Mandabach's house; his cut wrist, the broken garage window, and the splotches of blood on the freezer also pointed to his guilt. A jury instruction in order to be proper and not contain all the law pertinent to the case, nor be based upon all the facts presented, but each instruction should present the law as it is based upon relevant evidence which is conceptually integrated. In the case at bar Defendant's Tendered Instruction No. 3 was misleading in that it did not consider that there was more evidence present which tended to link Abbott personally with the break in than the mere fact that he was in possession of goods stolen in that break in.

*ISSUE TWO*

Abbott contends that the trial court erred in not directing a verdict in his favor at the close of the State's evidence, because the State failed to prove an essential element of first degree burglary, that is, that a dwelling house or other place of human habitation was broken and/or entered. He contends that the evidence only shows that Abbott broke into Mandabach's garage, that a garage is not a place of human habitation and is not part and parcel of a dwelling. We do not agree.

The garage in question was attached to the house. An interior door permitted entrance and exit from the house to the garage. A freezer full of food for use by the family was situated in the garage, as well as a pool table for the family's recreation. It is clear from the evidence that *the garage was part and parcel of the family dwelling.*

In *Burgett v. State* (1974), 161 Ind. App. 157, 314 N.E.2d 799, the defendant in that case broke into and entered a basement which provided no direct access to the house above; in upholding his conviction for first degree burglary this court at 803-804 said:

"Basements are located directly under the living area of a residence and are used for a variety of purposes connected with family living, such as storage of various household items, location of heating and mechanical equipment, and laundering of clothing. Being under the same roof, functionally interconnected with and immediately contiguous to other portions of the house, it requires considerable agility to leap over this fulsome interrelationship to a conclusion that a basement is not part of a dwelling house because no inside entrance connects the two.

\* \* \*

Leak's permanent place of abode was 1345 S. Belmont. His basement was directly contiguous to and a functioning part of his living quarters on the upper floor of his single family residence and was used for the storage of personal household items owned by him. Simple logic would suffer were we to conclude that such a basement was not a part of the dwelling house."

In the case at bar the garage was as much a part of Mandabach's house as the basement was in the house in *Burgett, supra,* and probably more so, since there was an interior door which allowed direct access from the house to the garage. We hold that the court did not err in not directing a verdict in favor of Abbott at the close of the State's evidence.

Judgment affirmed.

Robertson, C.J. and Buchanan, P.J., participating by designation, concur.

NOTE—Reported at 371 N.E.2d 721.