**Jimmy Lee BONNER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 678S121.**

Supreme Court of Indiana.

Aug. 16, 1979.

Rehearing Denied Sept. 26, 1979.

Lee J. Christakis, Gary, for appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant was convicted of Murder in the Perpetration of a Felony, to-wit: Burglary, and First Degree Murder, Ind. Code § 35–13–4–1 (Burns 1975). He was sentenced to life imprisonment upon the Felony Murder conviction. In this direct appeal, he raises four issues:

(1) Whether the trial court erred in admitting two photographs of the decedent's body into evidence.

(2) Whether the trial court erred in giving the State's instruction on self-defense.

(3) Whether the evidence was sufficient to sustain the verdicts.

(4) Whether the trial court erred in refusing to sentence the defendant under the new criminal code.

The facts, and reasonable inferences adducible therefrom when viewed most favorably to the State, disclose that the homicide was the ultimate result of a quarrel between the defendant and Helen Wright, the girl with whom he had been living for over a year prior to the incidents herein. One day in April, 1977, Helen moved out of the apartment. Defendant searched for her and found her at a tavern in the company of the owner, Columbia Davis—better known as Buster. A fight ensued, and the defendant was ejected from the tavern, at which time he hollered, "I'm going to get you. I'm going to get you." Defendant then flagged down a Gary policeman, who took him to the hospital so that he might receive medical attention for wounds received in the fight. At that time he told the officer, "I'm going to kill him." The officer advised that he should file a complaint with the Prosecutor's Office. The defendant left the emergency room—against medical advice, returned to the tavern, climbed to the roof and peeked through a window. There he observed Buster and Helen in bed together. He also saw a gun on Buster's chair. He broke into the building, doing so simultaneously with the passing of a truck so that the noise would not be heard and opened the unlocked door to the bedroom. Helen screamed. Buster

scurried out of the bed. The defendant grabbed the gun, shot Buster repeatedly until the gun was empty, went over to Helen and hit her on the head with the gun several times as he yelled, "Die bitch, die bitch." Then, upon hearing someone coming up the stairs, Defendant fled.

Buster died of a gunshot wound to the head. The defendant surrendered himself to the authorities several days later in Michigan and confessed to the shooting of Buster.

\*       \*       \*       \*       \*       \*

ISSUE I

■ The defendant contends that the relevancy of State's Exhibits No. 1 and No. 11, photographs of the deceased taken shortly after the shooting, is outweighed by their potential to prejudice the defendant due to their gruesome nature.

Photographs are admissible to evidence anything that a witness might himself be permitted to testify. *Bates v. State,* (1977) 267 Ind. 8, 10, 366 N.E.2d 659. A relevant photograph will not be excluded because it is gruesome; but rather, the relevance of the photograph must be weighed against its potential to inflame the passions of the jury. *Merritt v. State,* (1978) 267 Ind. 460, 371 N.E.2d 382. That weighing process is to be done by the trial court, and that determination will be reversed only for an abuse of discretion.

We have examined the photographs in question and the context by which they were admitted and have found no imbalance between their relevance and any tendency to improperly influence the jury. Exhibit No. 1 was used to identify the victim, and Exhibit No. 11 was relevant in that it showed the decedent's state of "undress" at the time he was shot.

We have not been favored with a view of the exhibits as only xerox copies, barely discernible as to what they are intended to portray are incorporated in the record. While, with some speculation, we believe the photographs to be unpleasant to view, we do not believe they were gruesome. If any serious question of imbalance existed, it

has been lost in the translation. We call counsel's attention to Appellate Rule 7.2(A)(3)(b).

## ISSUE II

■ The court, over Defendant's objection, gave a final instruction upon the law of self-defense. His objection was not to the content or form of the instruction but rather to the propriety of an instruction upon that subject, under the evidence of the case. It was argued by counsel that the defendant had not made a defense upon that theory and that the only inference or claim of self-defense was injected by the State upon cross-examination of the defendant "by asking—putting words into the defendant's mouth * * *."

Defendant's testimony on direct examination was that he had no intention to commit a felony when he broke into the dwelling and that, although he shot the decedent, perhaps intentionally, it was not done with premeditation. It is not clear to us why counsel objected to the instruction, nor do we perceive how it could have harmed the defendant. It appears to be the claim that the State set up a straw man in the defense by cross-examination and that the instruction knocked it down. In *Madden v. State*, (1970) 254 Ind. 628, 261 N.E.2d 847, we held that a correct instruction on intoxication, as a defense, was proper, where there was evidence of intoxication, notwithstanding that the defense had not been interposed.

The defendant's testimony on cross-examination was that he was fighting with the decedent over a gun, that the decedent had beat him earlier in the day, that he was trapped and had no choice but to protect himself. Such evidence rendered the giving of a correct instruction proper, notwithstanding that the defendant contended that such was not the theory of his defense. The omission of such instruction would have left the jury uninformed and could have led to an acquittal for the wrong reason.

## ISSUE III

In challenging the sufficiency of the evidence, Defendant contends that the evidence fails to show the requisite intent.

As a court of review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Rather we will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom to determine whether a reasonable juror could have found the existence of each of the elements of the crime charged beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

■ Defendant contends, with respect to the First Degree Murder charge, that there was a lack of proof of premeditation. However, his acts of threatening to kill Buster, quietly breaking into the decedent's quarters, opening the door and quickly grabbing the gun, provide ample support for the jury's finding that the killing was premeditated.

■ With respect to the count of Murder in the Perpetration of a Felony, to-wit: Burglary, he asserts that there is a lack of proof of an intent to commit a felony or an injury when he broke into and entered the dwelling. *See*, Ind. Code § 35–13–4–4 (Burns 1975). Purpose and intent may be inferred from the circumstances surrounding the incident. *Young v. State*, (1971) 257 Ind. 173, 273 N.E.2d 285. The facts of this case are clearly sufficient to sustain the jury's verdict on this count also.

## ISSUE IV

■ Defendant argues that he should be sentenced under the new penal code, though admitting that the crimes for which he was charged occurred prior to October 1, 1977, the effective date of our new code. However, this Court recently held that crimes committed prior to the effective date of the new penal code should be tried and, the defendant, if found guilty, sentenced under the statute in force at the time the offense was committed. *State v. Palmer*, (1979) Ind., 386 N.E.2d 946, 950, and cases cited therein.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.