**Jeffrey A. GAUNT, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 1282S480.

Supreme Court of Indiana.

Dec. 30, 1983.

John D. Walda, Ronald J. Ehinger, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a jury trial, the Defendant was found guilty of Burglary, a class B felony, Ind.Code § 35-43-2-1 (Burns 1979), and Theft, a class D felony, Ind.Code § 35-43-4-2 (Burns 1979). He was sentenced to twelve (12) years imprisonment upon the Burglary charge and two (2) years imprisonment upon the Theft charge. The two year sentence upon the Theft charge was suspended, and the Defendant was placed

on four (4) years probation to run consecutively to the Burglary sentence.

This direct appeal raises six (6) issues:

1. Whether Defendant's conviction for Burglary, a class B felony, is contrary to law;

2. Whether the convictions are supported by sufficient evidence;

3. Whether the trial court abused its discretion in denying Defendant's motion for the jury to view the scene of the alleged crime;

4. Whether the trial court erred in sustaining the State's objection, on hearsay grounds, to the testimony of a defense witness;

5. Whether the trial court erred in allowing the State to use a witness' deposition to refresh his memory, inasmuch as the deposition had been taken thirteen months after the date of the crime;

6. Whether Defendant's sentence of twelve (12) years on the Burglary charge was manifestly unreasonable or constituted cruel and unusual punishment.

The record disclosed that Mrs. Diann Ferris left her home on May 22, 1980 at about 7:20 a.m. to go to work. At about 12:40 p.m. Mrs. Ferris' neighbor, Kathy Noll, noticed a "two-toned green Chevy Blazer" automobile parked in the Ferris' driveway. She observed a medium-built young man with dark hair, wearing dark sweat pants and no shirt, walking around the house. She testified that, even though she was 400–500 feet away from the activity, nothing blocked her view. A few minutes later Noll again observed the vehicle, which had been backed into the driveway. She subsequently saw a person with dark hair and no shirt driving the vehicle away. A lawn mower handle was sticking out the back window of the vehicle. About twenty (20) minutes after the vehicle left the Ferris' residence, Noll heard the squealing of tires, looked out her window, and saw a beige "Buick" automobile with a dark vinyl top. She observed a person with dark hair, sweat pants, and no shirt get out of that automobile and run toward the Ferris'

house. Moments later, after that automobile had been turned around, its driver stopped the vehicle, and the same person who had gotten out, now carrying a gray tool box, reentered.

Noll reported the incidents to the police, who investigated immediately and found that a window in the garage door had been broken and that a lawn mower and two tool boxes, all of which had been in the garage the previous night, were missing. On the same afternoon, they found the Defendant at his home, dressed in dark sweat pants and no shirt, mowing his lawn with the stolen mower. A green "Blazer" was parked in his driveway, and the missing tool boxes were in his garage.

## ISSUE I

Defendant argues that his conviction for Burglary, a class B felony, is contrary to the law. The Burglary Statute, Ind.Code § 35–43–2–1 provides:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

Defendant contends that the attached garage which had been entered was not a "dwelling" within the meaning of the statute, but his argument is without merit.

In *Abbott v. State*, (1978) 175 Ind.App. 365, 371 N.E.2d 721, the Court of Appeals held that it was clear from the evidence that the garage which was broken into, in that case, was part and parcel of the family dwelling. The Court reasoned:

"The garage in question was attached to the house. An interior door permitted entrance and exit from the house to the garage. A freezer full of food for use by the family was situated in the garage, as well as a pool table for the family's

recreation." *Id.* at 370, 371 N.E.2d at 724.

Defendant argues that the fact that the garage contained a freezer full of food and was a place for family recreation was of great significance to the court in reaching its decision and that the State, in the case at bar, presented no evidence of such use of the garage. However, the court placed no greater emphasis on those two factors than it did upon the facts that the garage was attached to the house and that an interior door connected them. In fact, the court stated in *Abbott* that the "garage was as much a part of the house as the basement was in the house in *Burgett*, ... and probably more so, since there was an interior door which allowed direct access from the house to the garage." *Id.* at 371, 371 N.E.2d at 725.

In *Burgett v. State*, (1974) 161 Ind.App. 157, 314 N.E.2d 799, the Defendant had broken into a basement which had no direct access to the house. In upholding the conviction for first degree burglary the court said:

"Basements are located directly under the living area of a residence and are used for a variety of purposes connected with family living, such as storage of various household items, location of heating and mechanical equipment, and laundering of clothing. Being under the same roof, functionally interconnected with and immediately contiguous to other portions of the house, it requires considerable agility to leap over this fulsome interrelationship to a conclusion that a basement is not part of a dwelling house because no inside entrance connects the two." *Id.* at 161, 314 N.E.2d at 803.

In the case at bar, the garage was attached to the house, contained an interior connecting door and was used for household storage—a purpose connected with family living. That the breaking into the garage did not afford the Defendant immediate access to the actual living quarters is immaterial. It is enough that he entered a private part of the Ferris' dwelling. *Davis*

*v. State*, (1978) 176 Ind.App. 564, 376 N.E.2d 545, 546 (reh. denied).

## ISSUE II

■ The defendant next argues that the evidence did not establish that he was the perpetrator of the crime or that he had the requisite intent to commit a felony. We first note our standard of review for sufficiency of the evidence:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. (citations omitted).

■ Intent to commit a felony may be inferred from the circumstances surrounding the incident. *Turpin v. State*, (1982) Ind., 435 N.E.2d 1, 5; *Bonner v. State*, (1979) 271 Ind. 388, 392 N.E.2d 1169, 1171. Here there was sufficient evidence of probative value to support a reasonable inference that Defendant had the requisite intent to commit a felony. While Defendant claims that he went to the Ferris' home to search for his lost dog, he was seen there on three separate occasions by Witness Noll. The garage window was broken, and items from the garage were missing. Further, Noll witnessed a person matching the Defendant's description drive away in a green "Blazer" with a mower handle protruding from the back window and subsequently saw the same person carrying a tool box, enter a beige "Buick" automobile.

Further, Defendant's claim that the testimony of Steven Pick, the owner of the beige "Buick," was "inherently unbelievable" is without merit. Defendant has presented nothing which compels that conclusion. Inconsistencies were presented to the jury for its consideration. Defendant's

explanation of his possession of the stolen property immediately following the burglary was apparently rejected by the jury which was free to believe whomever it chose in fulfilling its fact finding function. *Collins v. State,* (1981) Ind., 429 N.E.2d 623, 624.

It is true that Witness Noll did not positively identify the Defendant as the person she saw at the Ferris' home; however, her description of the burglar was nearly identical to that of the Defendant as he was found, in possession of the stolen property, on the afternoon of the burglary.

## ISSUE III

Defendant next contends that the trial court erred in denying his motion for the jury to view the scene of the crime. Ind. Code § 35–1–37–3 (now repealed) regarding jury views provided in pertinent part:

> "Whenever, in the opinion of the court and with the consent of all the parties, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose."

 The Defendant argues that the State, by not objecting to the motion for a jury view, should be deemed to have consented to the view. However, consent is more than a failure to object. But even with the consent of the parties, to grant or deny the motion lay within the discretion of the trial court, and the ruling is reversible only for a clear abuse of that discretion. *Pinkerton v. State,* (1972) 258 Ind. 610, 616, 283 N.E.2d 376, 380. We find no such abuse.

## ISSUE IV

Defendant contends that reversible error occurred when the trial court sustained the State's objection to Donald Stuckey's hearsay testimony, thus denying him the benefit of crucial corroborating testimony. Stuckey testified that around noon on May 22, 1980, he called the Defendant to borrow some feeler gauges and that the Defendant subsequently brought them to his home in a two tone green "Blazer," stayed about five minutes and left. Later, around 1:00 p.m. Stuckey returned those gauges to Defendant's home and found the Defendant and Steven Pick there. He testified that he saw Pick open his trunk and remove red and gray tool boxes and place them in Defendant's garage. Defense counsel then sought to have the witness relate statements allegedly made by Pick at that time, but the State's "hearsay" objection was sustained.

 Defendant argues that inasmuch as the out-of-court declarant, Steven Pick, had been in court and had testified, the trial court erred in sustaining the State's objection under the *Patterson* rule. *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. In *Patterson,* evidence which had been admitted for another purpose was allowed to be considered as substantive evidence because the out of court declarant was available for cross-examination. Although we have held that it is not error to permit hearsay evidence to be considered as substantive evidence if the requirements of *Patterson* were met, it does not follow that hearsay not yet admitted is rendered admissible as substantive evidence simply because those requirements can be met. If the out of court declarant is available when the evidence is offered, there is no need to wander from the traditional hearsay proscriptions. Also, to qualify hearsay as substantive evidence under *Patterson,* it is not sufficient to show merely that the declarant has testified. It must be shown that he was available for cross-examination. There can be no cross-examination until after the questioned evidence is in. In this case, it is true that Pick, the out of court declarant, had testified, but his availability for cross-examination concerning the declaration was not shown.

Further, Stuckey's affidavit was subsequently admitted into evidence without objection and without any request for a limiting instruction. It contained the same

hearsay statement of Pick that the court had previously excluded. The defendant, therefore, cannot have been harmed by the ruling complained of.

## ISSUE V

■ The defendant complains of the State's having been permitted to use Steven Pick's deposition to refresh his memory, inasmuch as the deposition had been taken more than one year subsequent to the date of the crime. A written memorandum may be used to refresh the recollection of a forgetful witness. *Richardson v. State,* (1971) 255 Ind. 655, 658, 266 N.E.2d 51, 53; *Carter v. State,* (1980) Ind.App., 412 N.E.2d 825, 827 (Tr. denied). In *Carter,* the Court of Appeals reiterated foundational requirements originally set forth in *Clark v. State,* (1853) 4 Ind. 156:

"A witness may be permitted to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; but the memorandum cannot be substituted in the stead of the recollection of the witness.

"If an inspection of the writing recalls to the mind of the witness facts which he had previously known, but which had, at the moment, escaped his recollection, he can then testify to such facts as being within his own personal knowledge." 4 Ind. at 157.

■ At trial, Pick was asked if he remembered giving a deposition on June 24, 1981, and if his memory of the events was better on that day than it was currently. Pick answered both questions affirmatively. He further identified the deposition as a true copy of the testimony he had given and that he had reviewed it. Under all of the circumstances, it was for the trial court to determine whether the fact that the deposition had been taken one year after the date of the crime, and nearly one year prior to the trial, rendered it unreliable by reason of remoteness. We see no abuse of discretion in the ruling.

## ISSUE VI

Defendant argues that the sentence imposed upon him is manifestly unreasonable and constitutes cruel and unusual punishment.

■ At the time of Defendant's sentencing, the trial court explained its reasons for enhancing the Defendant's sentence as follows:

"The court finds that there are no mitigating circumstances and that the following are aggravating circumstances:

"1. That the Defendant committed the offense of illegally carrying a concealed weapon without a permit on February 20, 1981 after the present cause was filed in the DeKalb Superior Court and after he had been arraigned showing disregard for authority.

"2. That the Defendant has had numerous misdemeanor violations as a juvenile and has served time in 3 institutions as a juvenile as set forth on pages 2 and 3 of the Presentence Report.

"3. That the Defendant has shown no remorse for his actions and is unlikely to respond affirmatively to probation.

"These aggravating circumstances justify the increase of the sentence from the recommended sentence of 10 years to 12 years."

It is within the trial court's discretion whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Hill v. State,* (1983) Ind., 445 N.E.2d 994, 996–997. We will not alter a sentence set by the trial judge if it is within statutory bounds unless it appears that the sentence is manifestly unreasonable. *Bryan v. State,* (1982) Ind., 438 N.E.2d 709, 719; Ind.R.App.Rev.Sen. 2(1). A sentence is not manifestly unreasonable "unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." Ind.R.App.Rev.Sen. 2(2). Further, a punishment is excessive and unconstitutional if it:

"(1) makes no measurable contribution to acceptable goals of punishment such

that it constitutes nothing more than the purposeless and needless imposition of pain and suffering; or

"(2) is grossly out of proportion to the severity of the crime."

*Bray v. State*, (1982) Ind., 430 N.E.2d 1162, 1167, quoting *Hawkins v. State*, (1978) 269 Ind. 16, 19, 378 N.E.2d 819, 820–821.

■ Inasmuch as the trial court's sentence is within the bounds of the sentencing statute, is such that a reasonable person would deem it appropriate, reflects a concern for the acceptable goals of punishment, and is not grossly out of proportion to the severity of the crime, the Defendant's argument is without merit.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

My difference with the Court relates to the evidentiary ruling at issue in Part IV of the majority opinion. Pick had a conversation with appellant which Stuckey overheard. Pick testified for the prosecution regarding his recollection of what was said in that conversation. Stuckey was later called by the defense to give his version of what was said by Pick and appellant in that same conversation. His version differed from Pick's. Under similar circumstances we recently held that where the content of an out-of-court statement was taken up with the out-of-court asserter during her testimony at trial, she would be deemed to be available for full and effective cross-examination of the basis of the out-of-court statement, when at a later point in the trial a differing version of the same statement was offered. *Lowery v. State*, (1982) Ind., 434 N.E.2d 868, (Givan, C.J., and Pivarnik, J., dissenting on a different point.). Here, Pick testified that appellant removed the stolen tools from the car and placed them in the garage, and that he, Pick, did not touch them. He testified that at the time

they talked about the tools, that appellant said he liked tools, and that the subject of appellant's lost bird dog came up. Pick then testified that he could remember no more about the conversation. The prosecutor was permitted to treat Pick, his own witness, as a hostile witness. As I see it, the interest of the prosecution here to be served by cross-examining Pick had already been adequately served, when the court sustained the objection to the testimony of Stuckey on hearsay grounds, and therefore the court was in error in the ruling.

The majority concludes that no harm could have resulted from the exclusion of the oral testimony of Stuckey, because its substance in the form of an affidavit was admitted during his cross-examination by the prosecution. I do not agree. That affidavit was prepared by defense counsel at his office, and contained at least one gross error. The affidavit would be very weak in its persuasive force when compared to Stuckey's in-court testimony under oath that Pick had asked appellant to permit him to store these tools in appellant's garage since his dad wanted him to get them out of the barn. I would grant appellant a new trial, and require that Stuckey be permitted to testify outright as to what he heard Pick say at the time.