127 Ind. App. 34 (1956)
134 N.E.2d 239
DeARMOND ET AL.
v.
CARTER, DOING BUSINESS AS CARTER ELECTRICAL SERVICE.
No. 18,679.
Court of Appeals of Indiana.
Filed May 14, 1956.
Rehearing denied June 26, 1956.
Transfer denied November 13, 1956.
*36 Lawrence Booram, of Anderson, for appellants.
Bagot, Free & Shearer, of Anderson, for appellee.
CRUMPACKER, J.
On June 21, 1954, the appellee Roosevelt Carter procured a judgment in the Madison Superior Court foreclosing a mechanic's lien he then held on certain real estate in the city of Anderson, Indiana, *37 belonging to the appellants Grace B. DeArmond and William E. DeArmond as tenants by entireties.
The case was tried upon a complaint drawn on the theory that at the special instance and request of the appellants the appellee furnished the materials and labor necessary for the wiring for electricity of eight living apartments located on the second floor of a building belonging to appellants in said city of Anderson. That the reasonable value of the materials and labor so furnished is $1,665.73 to secure the payment of which he filed a mechanic's lien on said property in the manner provided by law. That the appellants refuse to pay their said debt to him although the same is past due and he therefore asks the foreclosure of said lien and all other just and proper relief. The court found for the appellee on this complaint and by its judgment fixed his lien at $1,332.58, foreclosed the same and provided for personal judgment over to cover any contingent deficiency. By this appeal the appellants challenge said decision as being: (1) Unsupported by sufficient evidence; (2) contrary to law; (3) excessive in amount; (4) erroneous in connection with the admission and exclusion of certain evidence; and (5) erroneously modified by nunc pro tunc order after term.
The first of these assigned errors requires an examination of the evidence most favorable to the decision. It may be summarized as follows: The appellee has been in the electrical contracting business in and about the city of Anderson, Indiana, since 1945. During the later part of the month of April, 1953, he received a telephone call from the appellant William DeArmond asking the appellee to meet him at 926 Main Street in said city of Anderson for the purpose of discussing a job of electrical wiring he and his wife, owners of the building at that address, proposed doing on the second floor thereof. This floor is 100 feet long by 80 feet wide and has recently *38 been cut up into eight living apartments each of which the appellants wanted wired for electricity. The appellee met the appellant William DeArmond as requested and, after an inspection of the premises, informed him that he could do a "patch-up" job for around $250 for materials and $250 for labor. There was some discussion as to what a "patch-up" job would consist of and as to whether it would meet the requirements of the city's building code but no agreement was reached as to the performance of the work. About a week later the appellee and William DeArmond again met and discussed the proposition of a complete new job of wiring for each apartment instead of the "patch-up" one first considered. DeArmond said that if the appellee would give him a list of the materials he would need he thought he could buy them for less than wholesale from a supply house in Anderson that was going out of business. Such a list was prepared and after some further discussion about the hourly rate of pay for labor DeArmond left taking the list of needed materials with him. Subsequently a Mrs. Bloomfield, the appellants' tenant occupying the street floor of the building involved, telephoned the appellee and told him that the DeArmonds had purchased some materials for the job and suggested that he prepare a written proposition under the terms of which he would do the work. He thereupon prepared such a statement, signed the same and delivered it to Mrs. Bloomfield. This written proposition was not introduced in evidence, its absence unexplained and there is no oral testimony as to its contents. The record is silent as to what became of it after it was delivered to Mrs. Bloomfield but it does appear that shortly thereafter she called the appellee and told him to go to work on the job. Before doing so, however, he went to the building and examined the materials the DeArmonds had purchased and found *39 most of them unsuitable for the work. He so informed William DeArmond and was told to use what he could of said materials, buy the balance himself and get started on the work. He did so on May 5, 1953, and in completing the job he installed new wiring throughout the second floor of the appellants' building which consisted of a new wire from an outside pole to a nine meter panel inside the building and from said panel three to four independent circuits to each of the eight apartments and all conduits, switches, wires and baseboard outlets necessary to completely and efficiently wire all the rooms therein. The evidence shows in detail the material furnished and labor performed by the appellee which competent witnesses testified to be reasonably worth $1,665.73.
It is beyond contention that a mechanic's lien must arise out of contract, express or implied, with the owner or person whose interest in the real estate it is proposed to bind by the lien. Mann v. Schnarr (1950), 228 Ind. 654, 95 N.E.2d 138. The evidence above summarized, which as we said at the outset is only that favorable to the decision, we believe to be sufficient to warrant the court in finding that the materials and labor for which the appellee sues were furnished by him at the special instance and request of the appellants. That there was no express agreement as to compensation and that no situation is disclosed whereby it can be inferred that the appellee furnished said labor and materials without expectation of being paid therefor. Under such circumstances the law implies a promise on the part of the appellants to make reasonable compensation for the labor and materials so furnished. Page, Law of Contracts. Vol. 1, § 1442; The Louisville, New Albany and Chicago Railway Co. v. Hubbard (1888), 116 Ind. 193, 18 N.E. 611.
Secondly, the appellants assert that the decision of *40 the court is contrary to law because the undisputed evidence compels the conclusion that the labor materials for which the appellee sues were furnished by him under the terms of an express oral contract whereby he agreed to do said work and furnish said materials for a maximum compensation of not to exceed $500. That the court arbitrarily and without reason ignored and refused to consider such undisputed testimony as otherwise it could not have reached the decision in controversy. If an express oral contract of the tenor for which the appellants contend was made, the only evidence that the minds of the parties actually meet on such an agreement is contained in the testimony of Thelma Bloomfield who testified that in April, 1953, she telephoned the appellee about rewiring the appellants' building and that in a day or two he came to see her in reference thereto. She explained to him that the building was to be rewired in such manner as to meet the requirements of the building code of the city of Anderson and he said he thought he could do it for about $300 but he wasn't sure and wanted a day or two to think it over. The next day he came into Mrs. Bloomfield's store and told her the job might run as high as $500. Mrs. Bloomfield relayed this information to the appellant Grace DeArmond by telephone. Mrs. DeArmond accepted the proposition and instructed the appellee, through Mrs. Bloomfield, to go ahead but keep the cost below $500 if he could. Although the appellant William DeArmond testified that the appellee had agreed with him to do the job not to exceed $400 he stated: "May I explain the difference, it was that he later had conversations with Mrs. Bloomfield which I went along with. I realize that in that large job  and so I was willing to go ahead to $500." From this evidence we think the court was justified in concluding that it is the alleged oral contract between the appellee and *41 Grace DeArmond, made through Mrs. Bloomfield, upon which the appellants rely and that it is the circumstances and conversations constituting said contract that the appellants contend are undisputed and unimpeached and therefore compel the conclusion that appellee's right to recover is limited to $500.
In discussing the question of uncontradicted testimony this court said in Goldberg v. Britton (1949), 119 Ind. App. 90, 84 N.E.2d 201:
"The credibility of witnesses and the weight to be given oral testimony is ordinarily to be determined by the trier of the facts. Of course, the trier of facts cannot arbitrarily reject items of oral evidence, but even though a particular item of evidence is not expressly or directly contradicted, this does not prevent consideration of other evidence, including circumstances and surroundings that might in any way affect the weight or credibility of such evidence. Among the factors that may be considered in determining the credit to be given to the testimony of a witness are: The interest of the witness, if any, in the outcome of the trial; his bias and prejudice, if any is shown; his opportunity for knowing and recollecting the facts about which he testified; the probability or improbability of his testimony; and his demeanor while on the witness stand."
Later in speaking on the same subject in Haynes v. Brown (1950), 120 Ind. App. 184, 88 N.E.2d 795, we said:
"... And even though an item of evidence is not expressly or directly denied or refuted, it does not necessarily stand as uncontradicted evidence, for the trier may disregard or disbelieve oral evidence if it is considered unreasonable or inconsistent with facts and circumstances shown by the other credible evidence in the case. Wright v. Peabody Coal Co. (1948), 225 Ind. 679, 77 N.E.2d 116.
"Nor does a lack of contradiction or dispute in the evidence of itself make us the finders of the facts or justify us in substituting our judgment for *42 that of the trial court. We can only do that when the evidence is all one way, and but one conclusion could be reached from the facts proved, Wiggam v. Rhodes Estate (1931), 92 Ind. App. 491, 176 N.E. 250; Wilson, Admx. v. Rollings, supra; Pearson Co., Inc. v. Cohen, et al., supra; for uncontradicted evidence will sometimes support conflicting inferences, and when that is the case, the inferences drawn by the trier of the facts will prevail."
Applying the rules announced in the foregoing decisions to the present facts the court could have reasonably concluded that the bid submitted to the appellant Grace DeArmond through Mrs. Bloomfield and which said appellant accepted, had reference to the "patch-up job the parties originally contemplated. Later it was decided to do a complete new job the extent of which we have heretofore described. It is unreasonable to suppose that the appellee would agree to do such a job for the same price he originally placed on "patch-up" work and the court no doubt so considered it. Thus it seems to us that even though the circumstances giving rise to the $500 limit contract were not specifically or categorically denied, other evidence in the case amply warranted the court in concluding that said contract was not the contract under which the appellee undertook and performed the work.
The appellants' next proposition is that the amount of the recovery is excessive. This is based solely on the contention that the amount of recovery is limited to $500 by express contract. The fact that the court properly repudiated such contract disposes of this contention.
During the course of the trial the appellee testified in great detail as to specific items of material and hours of labor that went into the job in controversy. In doing so he held in his hand a statement of account to which he referred and from which he *43 frequently read. The appellants objected to this on the ground that the memorandum to which the appellee referred, identified as plaintiff's Exhibit 1, was not a record of original entry. This objection was overruled which, the appellants contend, was error. We do not agree. It has been held repeatedly in this jurisdiction that a witness may, for the purpose of refreshing his recollection, refer to such memoranda as will serve the purpose. Marcisz et ux v. Osborne (1954), 124 Ind. App. 574, 118 N.E.2d 378; Wilber v. Scherer (1895), 13 Ind. App. 428, 41 N.E. 837; Place v. Baugher (1902), 159 Ind. 232, 64 N.E. 852. Plaintiff's Exhibit 1 was subsequently introduced in evidence over the appellants' objection to the effect that the exhibit was hearsay and not shown to have been made in the regular course of appellee's business. If there was error in admitting this exhibit we consider it harmless as the entire contents thereof was already before the court through the oral testimony of the appellee.
On his direct examination the appellee used, for the purpose of refreshing his recollection, a small calendar pad upon which he had entered certain data. On cross-examination the appellants had said calendar pad identified as defendant's Exhibit 1 and sought to introduce it in evidence. The exhibit was rejected and the appellants charge error. In general we believe it to be the rule that where a witness testified in chief from a memorandum used to refresh his recollection, the memorandum itself is admissible in evidence on cross-examination. Graham, Admx. v. Plotner (1928), 87 Ind. App. 462, 151 N.E. 735. It appears from the evidence that the exhibit in question is the appellee's sole record of those of his employees who worked on this job, their hours, and wages paid to each. It shows no federal income taxes withheld as required by law. The appellants concluded that this fact tended *44 to impeach the appellee's credibility as a witness and offered the exhibit for that purpose only. The record discloses however that when this exhibit was offered the appellee had already admitted on cross-examination that it did not contain any record of amounts withheld for tax purposes as required by federal law and that he had no record showing such facts. Its exclusion under the circumstances was harmless.
Finally the appellants contend that the record discloses that the decision of the court is based, in part at least, on evidence obtained through extra judicial enquiry. In substantiation of this proposition the appellants direct our attention to the following recital in the formal entry of the court's finding and judgment: "... And the court having heard the evidence and argument of counsel, and being duly advised in the premises, and having personally inspected the work performed by the plaintiff now finds for the plaintiff...." The appellants insist from this recital it conclusively follows that the court went outside the record and gathered evidence which influenced its decision. We do not so view the matter. While we recognize that it is reversible error for the court to base its judgment upon information obtained by extra judicial enquiry, Tumbleson v. Tumbleson (1947), 117 Ind. App. 455, 73 N.E.2d 59; Kessler v. Williston (1947), 117 Ind. App. 690, 75 N.E.2d 676; Watkins v. Watkins (1943), 221 Ind. 293, 47 N.E.2d 606, we cannot assume that the court did so in this instance solely on the basis of the italicized language above. It must be borne in mind that there is no dispute over the fact that the appellee performed the labor and furnished the materials for which he sues. Nor do the appellants contend that the labor was unskillful or the materials defective or inferior. The only issue in the case is whether or not the appellee, under the terms of *45 an express contract, undertook to do the job for a sum of money not to exceed $500. It is obvious that the closest inspection of appellee's work, could throw no light on that issue. Furthermore it is our opinion that the court had an inherent right to view the premises in controversy for the purpose of enabling it to more clearly understand the evidence given at the trial. 8 C.J.S., Trials, § 588, p. 368. There is nothing in the record before us that indicates that the court's inspection of the appellee's work was for any other than such legitimate purposes.
By the nunc pro tunc order, which the appellants say the trial court was without jurisdiction to make, the original finding and judgment was modified to show that the court's inspection of the appellee's work was made with the appellants' consent. In view of our position in reference to the order as originally entered the power of the court to modify it nunc pro tunc is of no consequence. Modified or unmodified, our decision remains the same.
Judgment affiffirmed.
NOTE.  Reported in 134 N.E.2d 239. Transfer denied Landis, C.J., Achor, J. not participating.