RICHARDSON v. STATE OF INDIANA.

[No. 168S13. Filed February 4, 1971. Rehearing denied March 15, 1971.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*John J. Dillon,* Former Attorney General, *Duejean C. Garrett,* Former Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was convicted of the crime of perjury upon a plea of not guilty and without the intervention of a jury. She was sentenced to the Indiana Women's Prison for the period of not less than one nor more than ten years.

The evidence in this case is as follows:

During the month of August, 1966, the Marion County Grand Jury was conducting an investigation of prostitution, pandering and related crimes which were reported to be occuring in an area in Indianapolis known as the "strip." On August 24, 1966, the appellant, Mary Richardson, was called as a witness to testify before the grand jury and was questioned as to her knowledge of the various criminal activities on the "strip." The grand jury foreman testified that as a part of her testimony of August 24, Mary Richardson stated that she had never met nor seen a person named Dorothy Tucker. That her only knowledge of such a person was an article she had read in the newspaper. She also stated that she had never known a person named Faith Adams nor anyone who went by that name.

Officer Collins of the Indianapolis Police Department testified that on the night of July 7, 1966, he had seen the appellant, Mary Richardson, in the company of Dorothy Tucker who was known as Faith Adams. On his first encounter with the two women he ordered them to get off of the street and go home. This they apparently failed to do because later the same evening Officer Collins again encountered the two women, at which time he arrested them.

Dorothy Tucker also known as Faith Adams testified that appellant's boy friend had introduced her to the appellant as Dorothy Tucker. She further stated that she and appellant were together on occasion during the summer of 1966, and that they were arrested together on or about July 7, 1966. She also stated that she and the appellant had lived together two

or three days in the early part of August of 1966. That the appellant also knew her as Faith Adams and from time to time would refer to her as either Faith or Dorothy. She stated that the appellant knew her by those names on August 24, 1966.

This Court has long recognized that if testimony alleged to be false is of no importance and immaterial it cannot be made the basis for a charge of perjury. However, in the case at bar the grand jury was in the process of investigating prostitution and related crimes in the "strip" area of Indianapolis when the appellant was asked if she knew a person by the name of Dorothy Tucker alias Faith Adams, who the witness knew to be one of the subjects of the investigation before the grand jury. The trier of fact was justified in finding that her false answer to the grand jury was calculated to furnish a shield to the identity of Dorothy Tucker and her activities. It was reasonable for the trial court to infer that the answer to the question was deceptive and calculated to be influential upon the grand jury. *State v. Kellis* (1923), 193 Ind. 619, 141 N. E. 337. We, therefore, hold that the appellant's contention that there is insufficient evidence to sustain the decision of the trial court is without merit. The evidence in this record is sufficient to sustain the finding of the trial court that appellant was guilty as charged.

Appellant next contends that the judgment is contrary to law in that two of the prosecuting witnesses were allowed to read from the records of the grand jury. Appellant contends that the proper way to present the testimony before the grand jury is to have the stenographer who recorded the testimony read her notes to the trial court citing *Higgins* v. *State* (1901), 157 Ind. 57, 60 N. E. 685. It is true under the *Higgins* case that it would be proper under certain circumstances for a reporter to read from her notes. The case does not limit the introduction of such evidence exclusively to this method. Burns Ind. Stat., 1956 Repl., § 9-817 provides as follows:

"A member of the grand jury may, however, be required by any court to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court; or to disclose the testimony given before them by any person upon a charge against him for perjury, in giving his testimony or upon his trial therefor. [Acts 1905, ch. 169, § 103, p. 584.]"

In *Davidson* v. *State* (1933), 205 Ind. 564, 187 N. E. 376, the Court was faced with a similar situation. A sheriff who had been present at a previous habeas corpus proceeding was permitted to testify concerning statements made by the defendant at the hearing. In that case the defendant objected on the ground that the transcript would be the best evidence. At page 570 of the opinion this Court stated:

"The fact, if it be fact, that the evidence of the appellant given in Oklahoma City was taken down by a court reporter and transcribed in longhand would not excluded the oral evidence given by Mr. Rouse. The reporter's notes would be but the written memorandum of a person, taken at the time, under official sanction. It might be more reliable and satisfactory evidence than any testimony from memory but the latter is not rendered incompetent by the fact of the existence of an official report."

It was, therefore, proper for the foreman of the Marion County Grand Jury to testify concerning the testimony of the appellant before the grand jury.

When Mr. Anderson was questioned concerning his recollection of the testimony of the appellant before the grand jury he stated that he did remember the substance of her testimony, but that he could not repeat it verbatim without referring to the transcript of the testimony taken at that time. Whereupon, the Court over the objection of appellant permitted the witness to use the transcript of the testimony to refresh his recollection as to the verbatim questions asked and answers given by the appellant. The trial court specifically and correctly stated that he was permitting

the use of the transcript for the sole purpose of refreshing the recollection of the witness.

It was not only proper for the trial court to permit the foreman of the grand jury to testify concerning the testimony of the appellant, it was also proper to permit him to refresh his recollection by the use of the transcript made of the grand jury proceedings. The law in Indiana which permits the use of written memoranda to refresh the recollection of a witness was established very early in this state. This Court stated in the case of *Clark* v. *State* (1853), 4 Ind. 156, 157:

> "A witness may be permitted to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; but the memorandum cannot be substituted in the stead of the recollection of the witness.

> "If an inspection of the writing recalls to the mind of the witness facts which he had previously known, but which had, at the moment, escaped his recollection, he can then testify to such facts as being within his own personal knowledge."

We find no reversible error in this case. The trial court is, therefore, affirmed.

Arterburn, C.J., concurs with separate opinion; Hunter, J., concurs; DeBruler and Prentice, JJ., dissent with separate opinions.

## CONCURRING OPINION

ARTERBURN, C.J.—I concur with the majority in this case. In so doing I would make the following observations. The dissent in this case correctly states the law concerning the use of written memoranda to refresh the recollection of a witness.

However in the case at bar the following is found in the record:

"Q. Do you have an independent recollection of the questions asked and the answers given?

"A. Reasonably so, yes.

"Q. Can you testify without any aid or help as to what questions were asked and the answers given?

"A. Yes, sir, reasonably so.

"Q. You would not need Exhibit 1 then, is that correct?

"A. No.

"Q. Can you remember specifically the questions asked and the answers given?

"A. No, not absolutely, specifically.

"Q. Then you do need aid to refresh your recollection, is that correct?

"A. Yes, sir, word for word, I do."

At that point the prosecutor started to read from the grand jury transcript and the following objection and ruling appears:

"MR. WARD: We object. The record would be the best evidence, Your Honor.

"THE COURT: Objection sustained, Mr. Prosecutor."

Mr. Ward then objected to the witness reading the transcript. The court ruled:

"THE COURT: He said he needed it for specific help. Overruled."

The record then contains a series of questions and answers set out in quotation marks following which the following objection and ruling appear:

"MR. WARD: No, Your Honor, I move to strike all the testimony. It appears it is the product of a third person. I have no opportunity to cross examine.

"THE COURT: Overruled. He said he knew the questions and answers and used that to refresh his memory."

There is no mention in the record that the transcript was read in evidence. When that was attempted the objection was sustained. The trial judge did correctly permit the witness to examine the transcript. The record is silent as to where the transcript was during the actual testimony of the witness. In the absence of an affirmative showing to the contrary we must

presume the trial court restricted the use of the transcript to the refreshing of the witness's memory. 3 Wiltrout, Ind. Practice § 2790(1).

## DISSENTING OPINION

PRENTICE, J.—I join in the dissent of Judge DeBruler and must further point out the inconsistency of the position of the majority and of the trial judge. The witness Anderson first testified that he remembered the testimony of the defendant given before the Grand Jury, but nevertheless was not asked to relate it. Rather, at the insistence of the prosecutor, he ultimately testified that he could not relate such testimony word for word without the transcript. The trial court, after having earlier suggested that the witness could use the transcript if necessary to refresh his memory, finally, over the objection of the defense counsel, ruled that the transcript could be used for "specific help." Yet the witness did not use the transcript "to refresh his memory" or for "specific help," but proceeded essentially to read the document. The evidence that went before the court, therefore, was not the witness' recollection but the transcript itself, which was inadmissible in this manner.

True, the transcript probably was correct and probably could have been properly authenticated and introduced. True, also, the witness probably could have testified from his memory to substantially the same circumstances without reference to the transcript, or with reference to it only to refresh his memory, and the result of the trial probably would not have been altered. It is not beyond the realm of reasonable probability, however, that the witness had no independent memory of the evidence as contained in the transcript, or that the transcript was not authentic. The prosecutor obviously was ill prepared to present the State's case. The trial court apparently was, for the moment at least, conjecturing the transcript's authenticity and accuracy; and, desiring to move the proceedings along and get at the full facts, it gave the prosecutor an unwarranted assist.

Our rules of evidence are too essential to the preservation of our basic doctrine of the presumption of innocence to be varied, in any given case, by such independent judgment, no matter how valid the belief or lofty the aim. For the trial court to relax the technical requirements of our procedures to compensate for counsel who is ill prepared, can only encourage indifference on the part of counsel until ultimately the trial judges will become advocates rather than impartial referees.

It was reversible error for the transcript to have been thus introduced into evidence.

### DISSENTING OPINION

DEBRULER, J.—Appellant was charged with giving false sworn testimony to the Marion County Grand Jury on August 24, 1966. The sole evidence in the record on appeal of the questions asked appellant and her answers to the Grand Jury consists of a purported transcript of the Grand Jury proceedings, which transcript was read into the trial record in this case by two of appellee's witnesses. The transcript was never authenticated and the trial court refused to permit it to be introduced in evidence. The trial court did, however, permit the two witnesses to read the transcript on the theory that they were merely using it to refresh their recollection of the Grand Jury testimony of appellant.

There is no question that a witness may use a written memo to refresh his memory concerning past events. *Clark* v. *State* (1853), 4 Ind. 156; *DeArmond* v. *Carter* (1956), 127 Ind. App. 34, 134 N. E. 2d 239; 3 WIGMORE, EVIDENCE, § 758 (3d ed. 1940). When this is permitted, the evidence concerning the past events is the testimony relating the independent recollection of the witness and *not* the written memo. In *Clark* v. *State, supra,* the Court said:

> "A witness may be permitted to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; *but the memorandum cannot be substituted in the*

*stead of the recollection of the witness."* (Emphasis added.) 4 Ind. at 157.

In *Southern R. Co. v. State* (1905), 165 Ind. 613, 75 N. E. 272, this Court said:

"While it was proper for this witness to refresh or stimulate his memory by reference to the original memoranda, still as a general rule he could not be permitted to testify wholly or entirely therefrom, which, to some extent at least, he apparently did. It was essential that he possess some knowledge or recollection independent of the memoranda, or, in other words, *it could not be substituted instead of the recollection of the witness.* This is the rule adhered to and enforced at least in this jurisdiction." (Emphasis added.) 165 Ind. at 625.

See also: *Elmore v. Overton* (1885), 104 Ind. 548, 4 N. E. 197; *U.S. v Riccardi,* 174 F. 2d 883 (3d Cir. 1949) ; 3 WIGMORE, EVIDENCE, § 763 (3d ed. 1940).

The major safeguard which minimizes the risk that the memo will create or shape the witness' memory rather than revive or refresh it, is that after looking at the written memo, the witness must be able to testify from his own memory. To guarantee that the witness is doing that, he must lay the memo aside and testify from memory, and he is not permitted to read the memo into evidence. Otherwise the written memo would be the evidence of the past events and not the refreshed recollection of the witness.

I believe the record clearly shows that the only evidence of appellant's Grand Jury testimony was supplied by appellee's two witnesses reading into evidence a purported verbatim transcript of the Grand Jury proceedings. During the questioning of the Grand Jury foreman, he was handed State's Ex. 1, a purported transcript of appellant's testimony before the Grand Jury, and the following occurred:

"Q. Would you tell the court what questions were asked of Mary Richardson and what answers she gave August 24, 1966 before the Marion County Grand Jury?

A. All the questions, sir?

Q. All the questions.

MR. WARD: Your Honor, I will object to the witness reading from the exhibit.

THE COURT: *He said he needed it for specific help.* Overruled. (Emphasis added.)

\* \* \*

THE COURT: Now, the answer to the question, Mr. Witness?

A. The question to Mary Richardson was, 'Within the last two weeks. And where was it that you met Dorothy Tucker?' Mary Richardson's answer was, 'I've never met her.' The second question to Mary Richardson, 'Well, when did you first see her?' Mary Richardson answered, 'Never have.' The third question to Mary Richardson, 'I understood you to say that you do know her.' 'By name' was the answer by Mary Richardson. The next question, 'Oh by name, you don't know her? You do know her name, is that right?' Mary Richardson's answer was 'Yes.' The next question to Mary Richardson was, 'When was the first time that you heard her name?' Mary's answer, 'Well, it was about that that me and Mr. Battles broke our relationship.'

MR. WARD: I object, as being irrelevant.

THE COURT: Overruled.

A. The next question to Mary Richardson, 'Oh. What caused you and Battles to break your relationship?' Her answer was 'I had some information that he was a panderer which to my knowledge was supposed to have been Miss Tucker and that's why I broke my relationship with him.' The next question, 'I see. How had you heard that he was a panderer or procurer for Dorothy Tucker, how did you learn that?' Mary's answer, 'Through the newspaper.' Question to Mary Richardson, 'You saw it in the newspaper, right?' Mary's answer, 'Yes.' Next question to Mary, 'And did you then have a conversation with Don Battles?' Answer by Mary, 'Yes, I did.' Next question to Mary, 'What did you say to him, what did he say?' Mary's answer, 'I asked him if it was true and he said that it was and I said, well, I didn't think that you would do such a thing.' Next question, 'What else did he say?'

Mary's answer, 'And while this was going on I said that we should quit going together and that I didn't want anything else to do with him.' Next question, 'What did he say to that?' Mary's answer, 'Nothing he said okay.' Next question, 'Where did you have this conversation with him?' Mary's answer, 'At my place.' Next question, 'Where you live?' 'Yes' was Mary's answer. Question, 'Well, did he just go ahead and leave then?' Mary's answer, 'Yes.' Next question, 'You've never talked to Dorothy Tucker though, is that right?' Answer, 'Yes.' Next question, 'Have you ever known a Faith Adams?' Mary's answer, 'No.' Next question, 'Have you ever known a girl that went by the name of Faith Adams?' Mary's answer, 'No.'

*MR. WARD:* No, Your Honor, I move to strike all the testimony. It appears it is the product of a third person. I have no opportunity to cross examine.

*THE COURT:* Overruled. He said he knew the questions and answers and used that to refresh his memory."

It is obvious that the witness is reading the transcript verbatim and is not testifying from memory concerning the testimony of appellant before the Grand Jury. The same thing occurred with the second witness, who read the exact same portion of State's Ex. 1 into the record.

This is not a mere technicality, especially in a perjury case, where the appellee was required to show that appellant's answers to certain questions were wilfully false. This can only be determined if we know exactly what questions appellant was asked and exactly what she answered. The Grand Jury proceedings were on August 24, 1966, and the trial was on October 2, 1967, over a year later. It may be true that in spite of this time gap the witnesses had an independent recollection of appellant's testimony before the Grand Jury and *could* have testified on that basis. However, we have no way of knowing that because their recollection is not placed in evidence and all we have is the reading verbatim of an unauthenticated, inadmissible, purported transcript of the grand jury proceedings. I dissent.

Prentice, J., concurs with separate opinion.

NOTE.—Reported in 266 N. E. 2d 51.