Jean BLINN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee.

No. 2–1084–A–307.

Court of Appeals of Indiana,
Second District.

Jan. 13, 1986.

Manuel P. Guerrero, Guerrero, Guerrero
& Guerrero, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Michael
Gene Worden, Deputy Atty. Gen., Indi-
anapolis, for appellee.

SULLIVAN, Judge.

After trial by jury, Jean Blinn was con-
victed of criminal recklessness, a class D
felony, I.C. 35–42–2–2 (Burns Code Ed.
Repl.1985). Upon appeal Blinn contends
that the trial court erred by admitting into
evidence an audio tape-recording of a tele-
phone conversation between Blinn's doctor
and one of the arresting officers.

We affirm.

Blinn telephoned the County Sheriff's Of-
fice on the morning of April 7, 1983. Blinn
was agitated because his wife had left and
he wanted a deputy to bring his wife home.
However, Blinn instructed the deputies not
to come onto his property.

A deputy sheriff arrived at Blinn's
house, parked on the road next to the prop-
erty and was fired upon by Blinn who was
inside a barn on his property. Blinn held
off the officers for approximately an hour

firing a total of eight or nine shots. None of the shots struck the officers or their cars and Blinn was eventually persuaded to surrender. Blinn was arrested and charged with criminal recklessness. He was retained at a mental health center for a few days thereafter. He was released upon posting of a bail bond.

In his defense, Blinn called Dr. Larry Mussleman, a physician specializing in psychiatry. Mussleman testified about previous sessions he had held with Blinn, including one the day before the shooting incident. Mussleman explained that on April 6, Blinn had come into his office because he was distressed and depressed over a number of events that had occurred in his life, including a death in the family, his own poor health, extended periods of unemployment for himself and his wife, and difficulties he was experiencing on his farm. Mussleman testified that Blinn exhibited suicidal tendencies on April 6 and that Mussleman had attempted to get Blinn into in-patient care at a mental health hospital but that no beds were available. Because of the unavailability of beds, Blinn was to be seen on an out-patient basis and was prescribed anti-depressant medication. Mussleman had talked on the telephone to Blinn during the shooting incident and opined during his testimony that Blinn's actions may well have been an indirect suicide attempt.

During cross-examination, Dr. Mussleman testified that at the time of the occurrence and shortly thereafter during Blinn's restraint in the mental health center, he was not frightened of Blinn. When asked if he had had a telephone conversation with the sheriff about Blinn during that period, he stated that he could not recall. He was then specifically asked whether he had told the sheriff that he was frightened of Blinn. The doctor stated that he may have done so but had no record or recollection of any such conversation. He testified that it was "well within the realm of possibility" that he told the sheriff that Blinn knew what he was doing and that if Blinn were released on bail Mussleman would "feel sorry for us." Record at 230. Although he could

not recall actually having made such statements, the doctor testified that such probably accurately reflected his opinions at the time some ten months earlier.

The doctor also testified that he probably told the sheriff that he thought Blinn was dangerous and that he would not release Blinn unless to a hospital setting or a penal facility.

After Blinn's counsel stated he had no objection, the tape was played for the doctor outside the presence of the jury for purposes of refreshing his recollection. He was then asked:

"Q. And have you listened to this particular tape?

A. I have listened to a portion of that tape.

Q. And does the portion of the tape that you listened to, is [sic] that appear to depict a phone conversation between you and Sheriff Ron Mowery?

A. Yes sir, it does.

Q. And is it an accurate reproduction of that particular phone conversation?

A. To me, it sounds to be an accurate reproduction.

Q. And, your best estimate as to when this conversation took place would have been sometime during the period that the defendant was a patient at the mental health center following April 7?

A. Yes sir." Record at 238.

The prosecution offered the recording into evidence. Blinn objected on grounds that the tape was repetitive and tended to give undue emphasis to the witness's testimony and that it was "not relevant and immaterial to the issues." Record at 236–237. Blinn's objections were overruled and the audio tape-recording, containing the statements about which Mussleman had been questioned was admitted into evidence and played for the jury.

The following day before he rested his case, Blinn moved to strike the recording

from the evidence on the basis that it was introduced only to refresh the memory of the witness, was not listed on State's Notice of Discovery Compliance, and that its admission constituted plain error affecting his substantial rights. On appeal Blinn argues that it was error to admit the tape-recording because it constituted improper substitution for the testimony of the witness and that it was outside the scope of direct examination. He also argues that it was repetitive, and that its prejudicial effect far outweighed its probative value.

■ An objection to allegedly inadmissible evidence must be made at the first available opportunity. *Bonds v. State* (1982) Ind., 436 N.E.2d 295. Objections to an exhibit are to be made after the exhibit is offered and before it is admitted into evidence. Objections made after the exhibit has been admitted are untimely and are not available for argument on appeal. *Snow v. Cannelton Sewer Pipe Company* (1965) 138 Ind.App. 119, 210 N.E.2d 118. *See Winston v. State* (1975) 2d Dist., 165 Ind.App. 369, 332 N.E.2d 229.

■ Blinn argues that his motion to strike preserves the objections made therein in addition to those stated at the time the recording was offered. While it is true that a trial court has the discretion to sustain untimely objections or motions to strike, the same is not true for appellate tribunals. *Courtney v. Luce* (1936) 101 Ind.App. 622, 200 N.E. 501; *Snow v. Cannelton Sewer Pipe Company, supra,* 210 N.E.2d 118. A motion to strike is the proper remedy when an objection cannot be interposed before the evidence is admitted, as when there is not time for objection, when the question is proper but the response objectionable, or when the objectionable nature of the evidence did not become apparent until after it was admitted. *See Collins v. State* (1981) Ind., 429 N.E.2d 629. The grounds asserted in Blinn's motion to strike were apparent when the evidence was first offered. Therefore those grounds are unavailable on appeal. Blinn has thus waived the grounds asserted in his motion and we look only to those objec-

tions made at the time of the introduction of the evidence.

■ Blinn's objection as to the prejudicial nature of the recording is of no moment. The fact that the tape was prejudicial to Blinn does not make it otherwise inadmissible. All evidence which tends to prove criminal guilt is prejudicial but that fact does not make the evidence inadmissible. Likewise, Blinn's assertion that the tape-recording was "not relevant and immaterial" is too general to preserve any claim of error in the admission of the recording. *O'Connor v. State* (1980) 272 Ind. 460, 399 N.E.2d 364; *Woods v. State* (1974) 2d Dist., 162 Ind.App. 316, 319 N.E.2d 688.

Blinn objected that the tape was repetitive of the testimony of Dr. Mussleman and placed undue emphasis upon it. However, Mussleman had not previously testified specifically as to the substance of those statements, only that he did not recall making them or that they were consistent with his feelings at that time. After listening to the tape, Mussleman could have been questioned in the presence of the jury as to the substance of the statements. Such would have been appropriate testimonial evidence. Instead, the recording itself was played.

The tape-recorded statements might be considered admissible as impeaching of the doctor's earlier testimony on cross-examination that he had not been frightened of Blinn.

The trial context within which the tape-recording was admitted, however, indicates that the prosecution was actually and genuinely interested in getting before the jury the doctor's opinions as they existed at the time, rather than in discrediting his testimony that he was not frightened of Blinn. For this reason and because the State does not argue impeachment as a basis of admissibility, we do not rest our decision upon that premise. *Cf. LaBine v. State* (1983) Ind., 447 N.E.2d 592.

Viewing the specifics of the objections made, it may be said that the substance of the taped conversation was somewhat repetitive. However, it must be acknowledged that Dr. Mussleman had not been able to categorically verify the statements.

It was therefore not surprising that the prosecution desired to convey that certainty by playing the actual conversation for the jury.

Blinn quotes from *Clark v. State* (1853) 4 Ind. 156, which held that:

"A witness may be permitted to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; but the memorandum cannot be substituted in the stead of the recollection of the witness." 4 Ind. at 157.

In *Clark*, the witness had stated that his recollection was not refreshed by the written memorandum yet the court held the memorandum inadmissible. The *Clark* case quite obviously would be decided differently in the light of subsequent cases recognizing the admissibility of such documents as past recollection recorded if the recollection has not been refreshed.

In *Gaunt v. State* (1983) Ind., 457 N.E.2d 211, our Supreme Court correctly referred to *Clark* as setting forth the foundational requirements for use of a written memorandum to refresh recollection. This reference should not be construed as approval of the holding of *Clark* with respect to past recollection recorded. *Gaunt* did not involve past recollection recorded. To the same effect is *Parker v. State* (1981) 3d Dist.Ind.App., 424 N.E.2d 132. *See also Carter v. State* (1980) 3d Dist.Ind.App., 412 N.E.2d 825.

Some commentators view the refreshing of present recollection in most instances as a mere fiction. In 4 *Jones on Evidence* (6th Ed.1972) § 27:9, it is stated as follows:

"As stated by a recent commentator, 'one may observe that not all of the cases leave one with an abiding conviction that the witness' recollection has indeed been refreshed so that he is testifying from a new and independent recollection.' This is the equivalent of saying that the so-called memory refreshment procedure is often nothing more than a fiction, whereas the writing itself is actually the most reliable evidence of the facts which the witness is expected to remember, when it

is vouched for by him as having been made at or about the time of the events or transactions to which the writing refers." [Footnote omitted.]

Professor Wigmore's treatise acknowledges that most jurisdictions require the absence of a present recollection before admission of past recollection recorded, but strongly criticizes that rule. Instead, it is said:

"A faithful memorandum should be acceptable, not conditionally on the total or partial absence of a present remnant of actual recollection in the particular witness, but *unconditionally;* because, for every moment of time which elapses between the act of recording and the occasion of testifying, the actual recollection must be inferior in vividness to the recollection perpetuated in the record." 3 *Wigmore on Evidence* (Chadbourne Revision 1970) § 738 p. 91. *See also* E. Cleary, *McCormick on Evidence*, § 302 (3d ed. 1984).

As we have observed, it is understandable that in certain instances the proponent of a recorded statement may prefer it admitted as substantive evidence rather than to refresh a somewhat vague or even nonexistent present recollection. We are nevertheless bound by the distinction which is drawn in Indiana between use of memoranda, recordings and the like to refresh a present recollection as opposed to admissibility of the document or recording itself as past recollection recorded. In *Richardson v. State* (1971) 255 Ind. 655, 266 N.E.2d 51, Justice Arterburn's separate concurring opinion provided the majority for the holding which in a perjury case, permitted the testimony of a grand jury foreman who used a transcript of the grand jury testimony to refresh his recollection as to the verbatim questions and answers given by defendant.

Justice Arterburn observed:

"There is no mention in the record that the transcript was read in evidence. When that was attempted the objection was sustained. The trial judge did correctly permit the witness to examine the transcript. The record is silent as to

where the transcript was during the actual testimony of the witness. In the absence of an affirmative showing to the contrary we must presume the trial court restricted the use of the transcript to the refreshing of the witness's memory. 3 Wiltrout, Ind.Practice § 2790(1)." 266 N.E.2d at 54.

Thus the majority holding of *Richardson* stands for the proposition that unless the document fails to refresh the recollection it may not be read into evidence as a substitute for the direct testimony of the witness concerning his present recollection as refreshed.

It would seem that if the transcript of evidence before the grand jury had been read into evidence rather than used to refresh the recollection of the witness, Justice Arterburn would have joined the two dissenters to form a majority to hold the transcript inadmissible because it was unauthenticated.

The dissent of Justice Prentice noted that the grand jury transcript probably could have been authenticated and properly introduced. Presumably, he was referring to the admissibility of a defendant's grand jury testimony in a subsequent prosecution for perjury. *See Higgins v. State* (1901) 157 Ind. 57, 60 N.E. 685 (Notes of grand jury testimony may be read into evidence whether or not the recorder has recollection of what the testimony was). In such instance the transcript is offered for a non-hearsay purpose and only to prove that the defendant made the statement. *See* E. Cleary, *McCormick on Evidence*, § 254, at 761 (3d ed. 1984). On the other hand, Justice Prentice may have reasoned that if authenticated and verified by the grand jury foreman and adopted by him, the transcript would have been admissible as a past recollection recorded even though the recordation was done by a third party. *See McCormick on Evidence, supra,* § 303.

■ We need not decide whether the tape recording was admissible as past recollection recorded without establishment of an inadequate present recollection, or whether Doctor Mussleman's recollection of the conversation was shown to be sufficiently inadequate as to justify the admission of the past recollection recorded.[1]

■ Even if erroneous, the admission of the recording does not compel reversal. The State presented numerous witnesses who testified that Blinn shot towards the officers. Blinn took the stand in his own defense and admitted that he threatened to kill the officers and that he shot "in the air" in their direction. This evidence is clearly sufficient of itself to support, beyond a reasonable doubt, a conviction of criminal recklessness.

The judgment is affirmed.

BUCHANAN, C.J., and SHIELDS, J. concur.

---

1. With respect to the concepts here involved, 3 *Wigmore, supra,* § 755 states:

   "The trial court's discretion should be allowed to control. There should be liberal interpretation and liberal exemption. And a ruling of admission should seldom, if ever, be deemed an error worth noticing on appeal."

Even Rule 803(5) of the Federal Rules of Evidence which specifically requires the absence of a present recollection before past recollection recorded may be admitted, receives a less than rigid application. *U.S. v. Senak* (7th Cir.1975) 527 F.2d 129 at 138.