Ellis HARTMAN, Appellant–Defendant

v.

STATE of Indiana, Appellee–Plaintiff.

No. 43A03–9202–CR–52.

Court of Appeals of Indiana,
Third District.

June 15, 1993.

Rehearing Denied Sept 30, 1993.

Richard J. Thonert, Romero & Thonert, Auburn, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Ellis Hartman was convicted of Operating a Vehicle While Intoxicated, a class C misdemeanor.

**FACTS AND PROCEDURAL HISTORY:**

On August 25, 1991, at approximately 2:00 A.M., Warsaw police Officer Tony Faucett (Faucett) was on patrol when he observed a maroon Oldsmobile turn westbound on old U.S. 30. The car took a wide turn and went off the right hand side of the road, came back left of center, corrected itself, and went off the right hand side of the road again. As the car corrected itself again, Officer Faucett made a U-turn and caught up with and stopped the vehicle. The defendant, Ellis Hartman (Hartman), was the driver of the stopped car.

After the vehicles stopped, Hartman got quickly out of his car but staggered onto the roadway. Officer Faucett also quickly exited his car and approached Hartman. Faucett requested to see Hartman's driver's license and registration. When Hartman complied, the officer noticed that he appeared to have difficulty in extracting the license from his wallet. Faucett described Hartman as having bloodshot and watery eyes with a strong odor of alcohol coming from his person. Faucett also stated that Hartman was unstable and swayed while he was standing and that Hartman failed four field sobriety tests. In addition, Hartman admitted that he had been at DJ's Bar since 12:00 noon, that he had been drinking beer, and that beer had served as his dinner.

Officer Faucett then read the Implied Consent Warning to Hartman and asked him to submit to a chemical test for intoxication. Hartman eventually agreed and was transported to the Kosciusko County Jail for the test. Upon arriving at the jail, Officer Joseph Hawn, a certified breath test operator, administered an Intoxilizer test to Hartman at 3:18 a.m. The test revealed that Hartman had a blood alcohol level of 0.14%.

Hartman was subsequently charged with Operating a Vehicle While Intoxicated under IC 9-30-5-1, a class C misdemeanor. After a trial before a jury, Hartman was found guilty, fined, and sentenced to fifteen days.

ISSUES:

Hartman presents five issues for appeal which we restate as follows:

I.  Whether the trial court erred in instructing the jury regarding certain presumptions created by statute.

II. Whether the trial court erred in admitting the results of the Intoxilizer test.

III. Whether the trial court erred in admitting state's exhibits numbered 2 and 4.

IV. Whether there was sufficient evidence to support Hartman's conviction for operating a vehicle while intoxicated.

V.  Whether the trial court erred in denying Hartman's motion to suppress based on Officer Faucett's alleged lack of probable cause to stop Hartman's vehicle.

DISCUSSION:

Issue I:

Hartman first contends that the trial court erred in giving final instructions numbered 14, 15, and 18. These instructions read as follows:

No. 14. A certified copy of the Department of Toxicology report stating that the breath test instrument involved was inspected and approved within One Hundred Eighty (180) days before the date of the breath test is prima facie evidence that the instrument involved was in proper working condition on the date the breath test was administered. (R. 80).

No. 15. Prima Facie evidence is evidence that would, if uncontested, establish a fact or raise a presumption of a fact. (R. 81).

No. 18. If the evidence has established that a chemical test was performed on a test sample taken from the Defendant, that the test was performed within three hours after the arresting officer had probable cause to believe the Defendant was Operating A Motor Vehicle With Blood Alcohol content of Ten Hundredths (.10%) or greater, and that the Defendant had at least .10% by weight of alcohol in the Defendant's blood at the time the

test sample was taken, the jury may presume that the Defendant had at least Ten Hundredths percent (.10%) by weight of alcohol in the Defendant's blood at the time the Defendant operated the motor vehicle. However, this presumption is rebuttable, and you are free to accept or reject this presumption as you see fit. (R. 84).

The decision concerning jury instructions lies within the trial court's discretion and we will not reverse unless the instructions misstate the law or otherwise mislead the jury. *Jaske v. State* (1990), Ind.App., 553 N.E.2d 181, 186, *trans. denied.* Instructions must be construed as a whole and if, when so considered, they state the law fully and correctly, they are not erroneous. *Wilson v. State* (1989), Ind., 533 N.E.2d 114, 117.

In this case, instruction number 14 was based on IC 9–30–6–5 which reads in part as follows:

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a):

(2) constitute prima facie evidence that the equipment or chemical:

(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy; and

(B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test.

The instruction tracks the language of the statute and correctly advised the jury of the law on this matter.

Hartman also objects to Instruction number 15. This instruction, however, merely advises the jury of the common legal understanding of "prima facie," a fact presumed to be true unless disproved by some evidence to the contrary. *See Blacks' Law Dictionary* 1071 (5th ed. 1979); 12 I.L.E. *Evidence* § 21 (1959) (a presumption of law creates a prima facie case which prevails in the absence of contrary evidence). This instruction correctly defines for the jury a potentially unknown

phrase set out in instruction number 14. We find no error or abuse of discretion in its giving.

■ Final instruction number 18 is also based on a statute. IC 9–30–6–15 reads in part as follows:

(b) If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:

(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken;

the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.

In addition, IC 9–30–6–2 provides in part: [1]

A test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5.

Instruction number 18 merely restates for the jury the combined content of these two statutes. Again, the instruction correctly states the law and we find no abuse of discretion in presenting it to the jury.

Hartman apparently challenges the validity and constitutionality of the statutes that form the basis for the instructions in this case. In response, we note that our supreme court has held that the legislature has the right to declare what shall be presumptive or prima facie evidence of any fact. *Green v. State* (1933), 204 Ind. 349, 184 N.E. 183, 186; 29 Am.Jur.2d *Evidence* § 10 (1967) (It is well established that it is competent for a legislative body to provide by statute . . . that certain facts shall be prima facie or presumptive evidence of other facts).

■ It has also been held by our supreme court that instructions such as these do not violate a defendant's rights to confrontation and cross-examination. *Platt v. State* (1992) Ind., 589 N.E.2d 222, 230. The legislature has fashioned an inspection and certification scheme to insure the reliability of test results, thereby protecting the rights of the accused, while at the same time streamlining the trial process. *Id.* Legislation under constitutional attack is clothed in a presumption of constitutionality. *Id.* For a statute to be declared unconstitutional its fatal defects must be clear. *Id.* None are apparent in the statutes relied upon here. Hartman was not deprived of his confrontation rights. He had the opportunity to confront both Officers Faucett and Hawn face to face. *See Id.* The alternative, as our supreme court has noted, would be to have a toxicologist in every courthouse every day giving testimony concerning his or her actual inspection of a particular Intoxilizer machine, and his or her certification of the officer as a competent administrator of the test. *Id.*

Finally, we also note that our supreme court rejected the claim that similar instructions unconstitutionally shift the burden of proof to the defendant on the elements of the offense. *Id.* at 231. For these reasons we find no error in the giving of instructions 14, 15, and 18 in this case.

Issue II:

■ Hartman next contends that it was error for the trial court to admit the results of the Intoxilizer test performed on him the night of August 25, 1991. After reading the record, however, it is apparent that Hartman failed to properly preserve this issue for appeal. A party must make his objection to a question before the answer is given in order to preserve the issue for appeal. *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116, 118. A party must also make his objection to an exhibit

---

**1.** In *Mordacq v. State* (1992), Ind.App., 585 N.E.2d 22 the court limited application of this statute and of IC 9–30–6–15 to instances where the test was performed within three (3) hours of the time the vehicle was *operated* by the defendant.

when it is offered and before it is admitted into evidence. *Blinn v. State* (1986), Ind. App., 487 N.E.2d 462, 464. An objection made after an exhibit has been admitted into evidence is untimely and not available for argument on appeal. *Id.*

In this case, the full exchange reads as follows:

Q   And did Mr. Hartman in fact deliver a breath sample through the audible signal?

A   Yes.

Q   Did there come a time when the audible signal stopped?

A   Yes.

Q   Did the machine then activate?

A   Yes.

Q   And was a result given?

A   Yes it was.

Q   And do you recall the result?

A   Point one four.

Q   Point one four?

A   Percents blood alcohol level.

Q   Is that by weight?

A   Yes it is.

MR. THONERT: If you're just going to offer it, I'm going to object to it.

MR. SUTTON: I guess Mr. Thonert's not going to object. State would move to admit State's Four [print out showing Hartman's blood alcohol level].

MR. THONERT: No objection to State's Four.

THE COURT: Okay. Ladies and gentlemen of the jury, this document has now been admitted into evidence. It is for your consideration. I would ask that you examine it and pass it on to the next juror without comment.

MR. THONERT: May we approach the bench. I—I apologize.

I may have misspoken. . . . I would renew that objection [hearsay, confrontation, and cross-examination] as it relates to this. I guess I just thought that it would be overruled . . .

(R. 203–05). The trial court then noted Hartman's objection for the record and overruled it.

It is clear from this exchange that, whether Hartman is relying on the answer to the question or the contents of the exhibit, his objection, if any, was untimely. We find therefore that no issue was preserved for appeal and the jury could properly consider such evidence.

Issue III:

Next, Hartman contends that the trial court erred in admitting State's exhibits numbered 2 and 4. We need not address Hartman's contention as to exhibit 4, having determined that Hartman failed to preserve that issue for appeal. *See* issue II, *supra.*

██ Hartman argues that the trial court erred in admitting State's exhibit number 2, asserting that the admission of this exhibit denied him his constitutional rights to confrontation and cross-examination. Exhibit 2 is a certified document showing that the Intoxilizer 5000 machine was properly inspected and certified.

IC 9–30–6–5 authorizes the Department of Toxicology of the Indiana University School of Medicine to adopt rules regarding the certification of breath test operators, breath test equipment and chemicals, and techniques for administering a breath test. The statute also provides that certificates issued in accordance with the rules adopted under the statute shall be sent to the clerk of the circuit court of the county in which the operator and equipment is located. Certified copies of certificates are admissible in an OWI prosecution.

Exhibit number 2 in this case is a certificate of inspection issued by the Department of Pharmacology and Toxicology of the Indiana University School of Medicine on June 18, 1991. This certificate was received by the clerk of the Kosciusko County court on July 22, 1991 and stated that the test was conducted pursuant to IC 9–11–4–5 [now IC 9–30–6–5] and regulations promulgated thereto. The test results showed that the equipment and chemicals in question were found to be in good operating condition, sufficient to meet the standards for operating condition as required by the department regulations. It is clear, therefore, from the evidence presented that this certificate was properly admissible un-

der IC 9–30–6–5. *See Regan v. State* (1992), Ind.App., 590 N.E.2d 640, 646.

Hartman argues, however, that IC 9–30–6–5 is unconstitutional, since it deprives him of his right to confrontation and cross-examination of the individuals who performed the tests certifying the equipment. As was noted previously, the legislature's certification scheme was fashioned to insure the reliability of test results, protect the rights of the accused, and streamline the trial process. *Platt, supra* at 230. Our supreme court has held that IC 9–30–6–5 and its certification process is constitutional and does not deprive a defendant of his opportunity to confront his accusers face to face. *Id.* As was noted earlier, the alternative would be to have a toxicologist in every courthouse every day giving testimony concerning his or her actual inspection of a particular Intoxilizer machine. *Id.* Under *Platt*, it is clear that there was no error in admitting State's exhibit number 2. We therefore affirm the trial court's ruling in this case.

Issue IV:

■ Hartman next challenges the sufficiency of the evidence to support his conviction for operating a vehicle while intoxicated. Specifically Hartman argues that the State failed to establish his blood alcohol content by weight at the time he was driving. This argument is without merit.

IC 9–30–6–15 states in pertinent part:

(b) If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:

(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken;

the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at

the time the person operated the vehicle. However, this presumption is rebuttable. IC 9–30–6–2 provides that such a test must be administered within three hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5.

These statutes clearly establish a presumption that a person charged with drunken driving had at least a .10% BAC when he was driving provided that 1) the person's BAC was at least .10% when the test was conducted, and 2) the test was performed within three hours after the officer had probable cause to believe that the person committed the offense. *Platt, supra* at 228.

The evidence in this case shows that Hartman's BAC measured .14% less than two hours after Officer Faucett stopped him. Hartman offered no evidence to rebut this presumption, choosing instead to attack the admissibility of the evidence on other grounds. The jury was therefore entitled to use this presumption when considering the evidence.

■ Whenever any driver of a motor vehicle has committed a traffic violation and the driver exhibits evidence of intoxication and has a blood alcohol content of .10% or more, such evidence will sustain a conviction for operating a motor vehicle while intoxicated. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268, 269. The evidence is clearly sufficient to sustain a verdict of guilty in this case.

Issue V:

Finally Hartman contends that the trial court erred in denying his motion to suppress based on Officer Faucett's alleged lack of probable cause to stop Hartman's vehicle. Again, we disagree.

■ As a general rule, automobile drivers are not shorn of their fourth amendment protections when they leave their homes and enter their automobiles. *Platt, supra* at 225. There is, however, nothing automatically unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause

for a formal arrest is lacking. *Id.* The "stop and frisk" doctrine announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has allowed courts to gauge the reasonableness of particular investigative stops by striking a balance between the public interest (behind the investigation) and the individual's right to personal security free from arbitrary interference from law officers. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975); *Platt, supra* at 225. Where the public interest served by the officer's investigation is great and the intrusion on individual privacy is small, investigative stops of limited duration, that are reasonably related to in scope to the justification for their initiation, have been upheld. *Brignoni–Ponce, supra*, 422 U.S. at 881, 95 S.Ct. at 2580; *Platt, supra* at 225. To justify a warrantless intrusion, the police officer need not have probable cause to make an arrest, but must point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant intrusion upon an individual's right of privacy. *Platt, supra* at 225–26. If the facts known by the police at the time of the "stop" are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied. *Id.*

We note in addition that the level of suspicion required for a *Terry* stop is less demanding than probable cause. *United states v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Platt, supra* at 226. In evaluating the validity of a stop such as this, we must consider the totality of the circumstances—the whole picture. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Platt, supra* at 226.

Considering the whole picture, then, the question before us is whether the facts known to Officer Faucett at the time he stopped Hartman's car were sufficient to support the belief, in a man of reasonable caution, that an investigation was appropriate. We believe they were.

The record in this case reveals that Officer Faucett observed a maroon Oldsmobile make a wide turn westbound onto old U.S. 30 at about 2:00 a.m. The car went off the right hand side of the road, came back and crossed the median, corrected itself, and went off the right side of the road again. It is well settled in Indiana that police may stop a vehicle for erratic driving alone. *Berry v. State* (1991), Ind.App., 574 N.E.2d 960, 964, *trans. denied; Castle v. State* (1985), Ind.App., 476 N.E.2d 522, 524. The evidence in this case is clearly enough to justify Officer Faucett's stop and is not offensive to the fourth amendment. No error may be assigned to the trial court in failing to grant Hartman's motion to suppress evidence obtained as a result of this stop.

CONCLUSION:

For the foregoing reasons, the decision of the trial court is affirmed.

STATON and FRIEDLANDER, JJ., concur.