**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 20 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID BECSEY**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOMINIQUE MCCLENDON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1307-CR-334 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael Jensen, Magistrate
Cause No. 49G20-1212-FC-81216

**March 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Dominique McClendon ("McClendon") appeals his convictions for two counts of Class C felony possession of a narcotic drug while in possession of a firearm.[1]

We affirm.

## ISSUE

Whether the trial court abused its discretion by admitting into evidence the drugs found during a patdown search of McClendon.

## FACTS

On November 30, 2012, around 5:00 p.m., Indianapolis Metropolitan Police Officer Michael Lepper ("Officer Lepper") crossed paths with a blue Chevy Impala containing four people. Upon noticing that the driver was not wearing a seat belt, Officer Lepper turned his police car around and followed the car. The officer then saw the car make a turn without properly signaling. Officer Lepper activated his emergency lights to initiate a traffic stop and called for backup. The car did not immediately stop. Officer Lepper saw the person in the back passenger seat, who was later identified as McClendon, make "a furtive movement" toward the front seat. (Tr. 52). The officer saw McClendon's head and shoulders "dip down[,]" and it appeared that McClendon was putting something underneath the front seat. (Tr. 52).

As soon as the blue car stopped and Officer Lepper exited his police car, the back driver side door "flung open[,]" and a juvenile jumped out of the blue car in an attempt to flee the scene. (Tr. 53). Officer Lepper pulled out his gun and ordered the juvenile to get

---

[1] Ind. Code § 35-48-4-6. McClendon was also convicted of Class C felony carrying a handgun without a license, but he does not challenge that conviction in this appeal.

2

back into the car. Additionally, canine Officer Mark Rand ("Officer Rand"), who was on the scene as backup, also ordered the juvenile to stop and threatened to release his police dog on him. The juvenile got back into the car's back seat but left the car door open.

Officer Lepper closed the car door and approached the car's driver, Jeremy Holiday ("Holiday"). Holiday told the officer that he did not have a license or any identification. "[B]ased off of a totality of the circumstances," including "the individual attempting to flee from the vehicle, the other back passenger reaching around on the floor board, the vehicle not coming to a stop immediately once [the officer's] lights were initiated, and the driver not being licensed," Officer Lepper "decided to get everybody out of the vehicle." (Tr. 55-56). The officer separately removed each of the four individuals and conducted a patdown on each of them.

Officer Lepper instructed McClendon to put his hands on top of the car and then started patting him down. When Officer Lepper patted McClendon between his legs, the officer felt an "unnatural bulge." (Tr. 58). The bulge felt "circular in nature" and "[i]t was very apparent" to Officer Lepper that the bulge was an "inanimate object[.]" (Tr. 58). When the officer felt the object, McClendon "[i]mmediately . . . dropped his hands and grabbed" where the officer had his hands. (Tr. 59). Officer Lepper grabbed McClendon's arms and ordered him to put his hands back on the car. Officer Lepper, thinking that the "hard circular object . . . could potentially have been a gun, a weapon, anything[,]" decided to look in McClendon's pants to "rule out that it wasn't a weapon." (Tr. 60, 66). The officer thought the object might be a weapon because the diameter and plastic material were consistent with the officer's own gun. When Officer Lepper pulled

3

back the waistband of McClendon's pants, he saw a pill bottle, which contained a rock-like substance, and two baggies containing pills. The substance in the pill bottle was later determined to be heroin, and the pills were later determined to be hydrocodone and alprazolam. Officer Lepper removed the drugs from McClendon's pants and handcuffed him. Officer Rand searched the car and found a handgun in the map pocket on the back of the front passenger seat, which is where McClendon had been sitting in the car.

The State charged McClendon with: Count I, Class C felony possession of a narcotic drug (heroin) while in possession of a firearm; Count II, Class C felony possession of a narcotic drug (hydrocodone) while in possession of a firearm; Count III, Class D felony possession of a narcotic drug (heroin and/or hydrocodone); Count IV, Class D felony possession of a narcotic drug (alprazolam); Count V, Class A misdemeanor carrying a handgun without a license; Count V, part II, Class C felony carrying a handgun without a license with a prior handgun conviction.

McClendon filed a motion to suppress the drugs found during the patdown search, arguing that the patdown search was unreasonable under both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. The trial court held a hearing on the motion on March 13, 2013. Thereafter, the trial court denied McClendon's motion, specifically finding that the patdown and removal of drugs from McClendon's pants were "proper." (App. 68).

On May 15, 2013, the trial court held a bench trial. Prior to the presentation of witnesses, McClendon stipulated to the admission of the lab report results and firearm testing. McClendon also stipulated to the State's use of photographs of the drugs instead

4

of the actual drugs when the State discovered that the police officers could not check the drugs out of the property room after 2:30 p.m. McClendon agreed to stipulate that the "photographs of the drugs [were] a fair and accurate representation of the actual evidence that was recovered and that those drugs were, in fact, the same drugs referenced in the lab report which [were] narcotics." (Tr. 42). McClendon's counsel confirmed that McClendon was stipulating only to the chain of custody of the drugs and that he could still "renew" his suppression argument. (Tr. 42).

When the State moved to admit State's Exhibit 1—the photograph of the drugs—into evidence, McClendon did not object to its admission. In fact, he affirmatively stated that he had "[n]o objection" to the admission of this evidence. (Tr. 61). After the State rested, McClendon testified and admitted that he possessed the drugs at issue. McClendon testified that he originally had the drugs in his pocket but then put them down into his pants when he saw that they were getting pulled over by the officer.

After both parties had rested and during McClendon's closing argument, McClendon's counsel stated:

> Judge, we renew our suppression argument as far as my position is that the Plain Feel Doctrine was violated. I don't think based on what the officer . . . testified to today that he was in fear that it was a firearm or a weapon that he was feeling when he found the pill bottle and the other pills.

(Tr. 98). Before ruling on the case, the trial court stated:

> Well, as to the Motion to Suppress, the Court previously had denied that. After hearing the evidence again today and the Defendant having renewed that motion at the beginning of the trial, the Court still finds that the search was proper.
> 
> * * * * *

5

It was a hard object in his crotch. Not knowing what it is, it -- it doesn't necessarily have to be a gun to be dangerous. It could be a knife. It could be a folding knife. It could be, you know, a folding hunting knife or any of those kinds of things which are hard, small. So I think the search and recovery of that item was proper.

(Tr. 101-02).

The trial court found McClendon guilty as charged and entered judgment of conviction on Counts I, II, and part II of Count V, which were all Class C felonies. The trial court imposed a four (4) year sentence on each of the Class C felony convictions and ordered that the sentences be served concurrently at the Department of Correction. McClendon now appeals.

## DECISION

McClendon argues that the trial court erred by admitting the drugs found on him during a patdown search. Specifically, McClendon argues that the drugs were inadmissible because the patdown search, which was conducted as part of a *Terry*[2] stop, violated his rights under both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. McClendon concedes that the stop of the vehicle, his removal from the car, and the initiation of a patdown search were reasonable under *Terry*. Instead, he argues that the *scope* of the patdown search was unreasonable. McClendon contends that the patdown of his crotch area where the drugs were found "exceeded the scope of a permissible *Terry* frisk" and that the "plain feel doctrine" was inapplicable to this case. (McClendon's Br. 7).

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*. "In reviewing the trial court's ultimate ruling on admissibility, we may consider the foundational evidence from the trial as well as evidence from the motion to suppress hearing that is not in direct conflict with the trial testimony." *Hendricks v. State*, 897 N.E.2d 1208, 1211 (Ind. Ct. App. 2008).

The State argues that McClendon waived any argument challenging the admission of the drugs found during the patdown search by failing to object to its admission at trial. We agree.

"A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. *See also Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."); *Hartman v. State*, 615 N.E.2d 455, 459-60 (Ind. Ct. App. 1993) (explaining that a party must make an objection to an exhibit when it is offered and before it is admitted into evidence and that an objection made after the evidence is admitted is untimely and unavailable for argument on appeal), *reh'g denied*.

Here, McClendon did not make a timely objection to the admission of the drugs at trial. Prior to the presentation of witnesses, McClendon stipulated to the State's use of photograph of the drugs instead of the actual drugs for chain of custody purposes only. However, when the State moved to admit the drugs into evidence, McClendon did not object. In fact, he affirmatively stated that he had "[n]o objection" to the admission of this evidence. (Tr. 61). An "'appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous.'" *Halliburton v. State*, 1 N.E.3d 670, 678-79 (Ind. 2013) (quoting *Harrison v. State*, 258 Ind. 359, 363, 281 N.E.2d 98, 100 (1972)). Consequently, McClendon has waived appellate review of his claim of error. *See, e.g.*, *Brown*, 929 N.E.2d at 207 (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized); *Jackson*, 735 N.E.2d at 1152 ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."); *Wagner v. State*, 474 N.E.2d 476, 484 (Ind. 1985) ("When a motion to suppress has been overruled and the evidence sought to be suppressed is later offered at trial, no error will be preserved unless there is an objection at that time."); *Lewis v. State*, 755 N.E.2d 1116, 1123 (Ind. Ct. App. 2001) (holding that defendant's failure to challenge constitutionality of search until after evidence had been admitted and after he had completed his initial cross-examination of the officer resulted in waiver of appellate review).

8

Nevertheless, "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. *See also Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) ("'Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error.'") (quoting *Cutter v. State*, 725 N.E.2d 401, 406 (Ind. 2000), *reh'g denied*).

"The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Brown*, 929 N.E.2d at 207 (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The *Brown* Court explained that a showing of fundamental error arising from the admission of alleged illegally seized evidence is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Brown*, 929 N.E.2d at 207.

Just as in *Brown*, McClendon does not assert any such claims in this case. Instead, McClendon merely asserts that the evidence was improperly admitted, alleging that it

9

was the product of an unconstitutional search.[3] Thus, McClendon's claim of error does not rise to the level of fundamental error. *See id.* (holding that a claim of error asserting that evidence was unlawfully seized, without more, does not constitute fundamental error). Because McClendon did not object to the admission of the evidence at issue and has failed to demonstrate any fundamental error in the admission of the evidence, we need not address the issue of whether the search of his person was lawful. *See, e.g.*, *id.* at 208 (explaining that it is not necessary to resolve the issue of whether a search was lawful where the defendant had failed to preserve the issue by failing to object and where there was no fundamental error).

Waiver notwithstanding, we will address the merits of McClendon's challenge to the admission of the drugs under both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution.

A. Fourth Amendment

The Fourth Amendment protects citizens against unreasonable searches and seizures. [4] *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013) (citing U.S. Const. amend IV). One exception to the warrant requirement under the Fourth Amendment is the *Terry* investigatory stop and search, which allows a police officer to pat down an individual for

---

[3] Indeed, McClendon fails to acknowledge his lack of objection at trial and does not assert that the admission of the evidence constituted fundamental error.

[4] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

10

weapons.  *See Terry*, 392 U.S. at 27; *Shinault v. State*, 668 N.E.2d 274, 276 (Ind. Ct. App. 1996).

Again, McClendon does not dispute that the officer was justified in conducting a *Terry* stop and search.  Instead, the issue before this Court is whether the search exceeded the scope permitted under *Terry*.

"When a police officer makes a *Terry* stop, if he has a reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault him."  *Shinault*, 668 N.E.2d at 277 (citing *Terry*, 392 U.S. at 27).  Additionally, "the seizure of contraband detected during the lawful execution of a *Terry* search is permissible."  *Drake v. State*, 655 N.E.2d 574, 575 (Ind. Ct. App. 1995) (citing *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (under "plain view" doctrine, police officer lawfully seized contraband while conducting lawful *Terry* search of interior compartment of automobile)).  In *Minnesota v. Dickerson*, 508 U.S. 366 (1993), the United States Supreme Court expanded the "plain view doctrine" and adopted the "plain feel doctrine."  *Drake*, 655 N.E.2d at 575-76.  Under the "plain feel doctrine," "police officers may seize contraband detected through the officer's sense of touch during the lawful execution of a *Terry* protective pat down search."  *Wright v. State*, 766 N.E.2d 1223, 1233 (Ind. Ct. App. 2002) (citing *Dickerson*, 508 U.S. at 373).  When determining the admissibility of contraband seized under the "plain feel doctrine," the following two issues must be considered:  (1) "whether the contraband was detected during an initial search for weapons rather than during a further search[;]" and (2) "whether the identity of the item was immediately apparent to the officer."  *Id.*

11

Here, the record before us reveals that Officer Lepper discovered the drugs in McClendon's pants during his initial search for weapons. When Officer Lepper patted McClendon between his legs, the officer felt a circular-shaped bulge. When the officer felt the object, McClendon "[i]mmediately . . . dropped his hands and grabbed" where the officer had his hands. (Tr. 59). Officer Lepper testified that he thought the "hard circular object . . . could potentially have been a gun, a weapon, anything[,]" and he specified that he thought the object might be a weapon because the diameter and plastic material were consistent with the officer's own gun. (Tr. 60). He also testified that he decided to look in McClendon's pants to "rule out that it wasn't a weapon." (Tr. 66).

Based on the specific facts before us, we conclude that the seizure of the drugs was permissible under and did not exceed the scope of *Terry*. *See, e.g.*, *Shinault*, 668 N.E.2d at 277-78 (holding that—although the incriminating nature of the cylindrical-shaped bulge felt in the defendant's pocket was not immediately apparent to the officer who testified that he thought it could be a weapon, a bag of pot, or "a hundred different things"—the officer's seizure of drugs from the defendant was permissible under *Terry* because the officer needed to "dispel[] the fear that the object was not a weapon"); *Drake*, 655 N.E.2d at 577 (holding that an officer's seizure of cocaine was within the scope of *Terry* where the officer discovered the contraband during the *Terry* search for weapons and was concerned that the solid object could have been a knife or mace). *See also Harris v. State*, 878 N.E.2d 534, 538 (Ind. Ct. App. 2007) ("In order to preserve officer safety, police may remove an item whose identity is not immediately discernable by touch and that might be used as a weapon."), *trans. denied*.

12

B. Article 1, Section 11

Lastly, we address McClendon's argument that the admission of the drugs into evidence violated his right under Article 1, Section 11 of the Indiana Constitution.[5]

"The purpose of Article 1, Section 11 is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Taylor v. State*, 842 N.E.2d 327, 334 (Ind. 2006). "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). "The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360. While other relevant considerations may exist under the circumstances of the case, the reasonableness of the search or seizure turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361.

Here, Officer Lepper attempted to pull over the vehicle in which McClendon was a passenger. When the officer activated his emergency lights to initiate a traffic stop, the car did not immediately stop, and McClendon made "a furtive movement" toward the

---

[5] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

front seat as if he were putting something underneath the front seat. (Tr. 52). Once the vehicle stopped, one of the passengers attempted to flee, and the driver stated that he did not have a license or identification. When the officer's patdown reached McClendon's legs and groin area, McClendon "[i]mmediately . . . dropped his hands and grabbed" where the officer had his hands. (Tr. 59).

Here, there was an elevated degree of suspicion or concern that McClendon had a weapon. Furthermore, the degree of intrusion was not high, especially where McClendon concedes that this *Terry* stop and his removal from the car were proper. Finally, the extent of law enforcement needs were high in light of the officer's need to make sure that McClendon did not have a weapon. Based on the totality of the circumstances and the specific facts of this case, we conclude that the seizure of the drugs from McClendon was reasonable and not in violation of Article 1, Section 11. Therefore, the trial court did not err in admitting the drugs into evidence at trial.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.